# EXHIBIT A

****FILED: BROWARD COUNTY, FL - Brenda D. Forman, CLERK 2/13/2026 4:30:00 PM.****

FORM 1.997.     CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.     CASE STYLE

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL
CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

Plaintiff _Mina Awad_

Case **26 - 0 0 0 2577**
Division: _____

vs.

Defendant _meta Platforms, Inc_



II.     AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

_____ $8,000 or less
_____ $8,001 - $30,000
_____ $30,001- $50,000
_____ $50,001- $75,000
_____ $75,001 - $100,000
___✓___ over $100,000.00

III.     TYPE OF CASE     (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

### CIRCUIT CIVIL

_____ Condominium
_____ Contracts and indebtedness
_____ Eminent domain
_____ Auto negligence
_____ Negligence—other
       _____ Business governance
       _____ Business torts
       _____ Environmental/Toxic tort
       _____ Third party indemnification
       _____ Construction defect
       _____ Mass tort
       _____ Negligent security
       _____ Nursing home negligence
       _____ Premises liability—commercial
       _____ Premises liability—residential
_____ Products liability
_____ Real property/Mortgage foreclosure

       _____ Commercial foreclosure

       _____ Homestead residential foreclosure

       _____ Non-homestead residential foreclosure

       _____ Other real property actions

_____ Professional malpractice
       _____ Malpractice—business
       _____ Malpractice—medical
       _____ Malpractice—other Professional
___X___ Other
       _____ Antitrust/Trade regulation
       _____ Business transactions
       _____ Constitutional challenge—statute or ordinance
       _____ Constitutional challenge—proposed amendment
       _____ Corporate trusts
       _____ Discrimination—employment or other
       _____ Insurance claims
       _____ Intellectual property
       ___X___ Libel/Slander
       _____ Shareholder derivative action
       _____ Securities litigation
       _____ Trade secrets
       _____ Trust litigation

*\*\*\* FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/13/2026 4:39:00 PM. \*\*\**

## COUNTY CIVIL

_____ Civil
_____ Real property/Mortgage foreclosure
_____ Replevins
_____ Evictions
      _____ Residential Evictions
      _____ Non-residential Evictions
_____ Other civil (non-monetary)

**IV.   REMEDIES SOUGHT** (check all that apply):
   __X__ Monetary;
   __X__ Nonmonetary declaratory or injunctive relief;
   _____ Punitive

**V.   NUMBER OF CAUSES OF ACTION:** [  ]
(Specify) _____

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
   _____ yes
   _____ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   _____ no
   __ yes If "yes," list all related cases by name, case number, and court._____

_____

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**

   __X__ yes

   _____ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**

   _____ yes
   __X__ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature _____Mina Awad_____          Fla. Bar # _____
                   Attorney or party                          (Bar # if attorney)

_____Mina Awad_____     _____02-18-2026_____
(type or print name)          Date

Form 1 997 Revised 4/1/22

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT

# IN AND FOR BROWARD COUNTY, FLORIDA

**CASE NO.: 26-0002577**

**MINA AWAD (NMLS #1894769), Petitioner/Plaintiff,**
v.
**META PLATFORMS, INC., Defendant.**



*Amended*

---

## COMPLAINT FOR DEFAMATION PER SE, GROSS NEGLIGENCE, INTENTIONAL MISCONDUCT, TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS, AND DECLARATORY RELIEF – ARBITRATION

Plaintiff, **Mina Awad**, sues Defendant **Meta Platforms, Inc. ("Meta")**, and alleges as follows:

---

## 1. DISCLOSURE & AI CERTIFICATION

(Pursuant to Broward Administrative Order 2026-03-Gen)

1. Plaintiff, **Mina Awad,** hereby discloses that generative artificial intelligence was used to assist in the preparation, research, and drafting of this Complaint.
2. **Specific Tools Used:**
   a. **OpenAI ChatGPT (GPT-4o/o1):** Used for structural organization, initial drafting of legal language, and synthesizing factual allegations.
   b. **Google Gemini (Gemini 2.0/3.0 Flash):** Used for real-time legal research, verifying 2025–2026 case law precedents (including *Lawshe v. Verizon*), and cross-referencing Florida statutory requirements.
3. **Required Certification:** The undersigned certifies that generative AI was used to prepare this Complaint and has independently verified the accuracy of all legal citations, factual statements, and language generated by AI. The undersigned accepts full responsibility for the contents of this filing.

## 2. PARTIES AND JURISDICTION

4. Plaintiff **Mina Awad** is a resident of Broward County, Florida, and a multi-state licensed fiduciary, including:
   a. NMLS #1894769 (FL, VA, TN, TX, PA) – Mortgage Loan Originator
   b. IRS Enrolled Agent (#00153764-EA)
   c. Real Estate Broker Licenses: FL #3269643, TN #356772
   d. Insurance Licenses: 2-20 General Lines & 6-20 Adjuster (FL, Spousal)
   e. Florida Registered Nurse (RN)
   *(Exhibit A: Plaintiff Licenses)*
5. Plaintiff's **spouse**, a Florida Registered Nurse, was directly impacted by Meta's publication of false criminal allegations. *(Exhibit B: Spouse License)*
6. Plaintiff has a **7-month-old daughter**, who suffered emotional distress indirectly due to Meta's defamatory actions targeting Plaintiff's spouse.
7. Defendant **Meta Platforms, Inc. ("Meta")** is a foreign corporation providing interactive computer services to Florida residents.
8. Venue is proper in Broward County, Florida, as the defamatory statements were published to and viewed by third parties in this jurisdiction.
9. On **Information and Belief**, this Court has personal jurisdiction over Meta under Fla. Stat. § 48.193(1)(a)(2) for committing tortious acts (Defamation Per Se) within Florida.

## 3. GENERAL ALLEGATIONS

10. On **Information and Belief**, Plaintiff maintained a professional reputation unblemished prior to Meta's defamatory actions. Plaintiff used Meta's platform for personal use and to manage two pages, posting educational content and lighthearted posts.
11. On **July 16, 2025**, Meta permanently banned Plaintiff's account and emailed a defamatory statement accusing Plaintiff of **"Child Sexual Exploitation,"** a demonstrably false accusation. *(Exhibit C: Meta Terms, Accusation Email, Account Termination Notice)*
12. On **Information and Belief**, Meta published this false accusation to Plaintiff's **spouse**, who saw the email on the home computer while caring for their **7-month-old daughter**.
13. Under Fla. Stat. § 39.201, an RN is a Mandated Reporter. By publishing a felony-level accusation, Meta placed Plaintiff's spouse in an impossible legal and professional position, risking revocation of her nursing license and criminal liability for failure to report.
14. On **Information and Belief**, Meta's intentional targeting of Plaintiff's spouse amplified the severity of the defamation per se, causing immediate legal and professional jeopardy, emotional distress, and reputational harm.
15. On **Information and Belief**, Meta published a CyberTipline report to the **National Center for Missing and Exploited Children ("NCMEC")**, relying on unverified AI "hash matches" flagged as "unconfirmed."

*\*\*\* FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM \*\*\*\**

16. Plaintiff was forced to contact the **State Attorney General, Department of Justice, and NCMEC** to clear his name and protect his multi-state fiduciary licenses. *(Exhibit E: Communications sent to clear name)*

17. On **September 19, 2025**, Meta responded to Plaintiff's regulatory complaint with the **Consumer Financial Protection Bureau (CFPB)**, affirmatively representing that a "further investigation" confirmed Plaintiff as a "safety and security" risk. Plaintiff alleges this statement was false. On **Information and Belief**, no meaningful human review occurred before Meta issued this statement.

18. Plaintiff further alleges Meta acted with **actual malice and intentional misconduct** by making such defamatory statements to a federal regulator without verifying their truth.

---

## 4. MANDATORY VS. VOLUNTARY REPORTING

19. Under 18 U.S.C. § 2258A, a provider's report to NCMEC is mandatory only if the provider has "actual knowledge" of an "apparent violation."

20. Plaintiff alleges Meta's report was **voluntary** and relied solely on an AI "hashing" process flagged as "unconfirmed."

21. *Lawshe v. Verizon Communications Inc.* (2025) confirms that an unconfirmed match does not constitute actual knowledge of an apparent violation; voluntary reports based on unverified AI are not entitled to statutory immunity under 18 U.S.C. § 2258B. *(Exhibit D: Lawshe v. Verizon excerpt)*

22. On **Information and Belief**, Meta's voluntary disclosure, internal dissemination, and publication to Plaintiff's spouse constitute defamation per se, interference with fiduciary duties, and extreme reputational harm.

23. On **Information and Belief**, Meta's actions violated the Stored Communications Act (18 U.S.C. § 2702) by disclosing private account information without legal justification or an "apparent violation" threshold.

24. On **Information and Belief**, Meta's actions directly interfered with Plaintiff's ability to operate his multi-state fiduciary and mortgage business, constituting tortious interference with business relations.

---

## 5. SECTION 230 / AI CONTENT PROVIDER LIABILITY

25. On **Information and Belief**, Meta is not entitled to immunity under 47 U.S.C. § 230 because the defamatory content was generated by Meta's proprietary AI, not by a third party.

26. Meta materially developed and assigned the false criminal label "child sexual exploitation" to Plaintiff's profile, making Meta an Information Content Provider (*Fair Housing Council v. Roommates.com*).

27. On **Information and Belief**, Meta's automated system negligently issued criminal labels in under five minutes without human verification, creating foreseeable harm to Plaintiff's multi-state licenses (*Lemmon v. Snap, Inc.*).

28. Ignoring Plaintiff for seven months while labeling him as a criminal constitutes **Actual Malice** and **Intentional Misconduct**.
29. On **Information and Belief**, reliance on unverified AI "hash matches" strips Meta of Section 230 "Good Samaritan" protection and 18 U.S.C. § 2258B immunity (*Lawshe v. Verizon*, 2025).
30. Meta's independent communications accusing Plaintiff of child sexual exploitation constitute Meta's own speech (*Barnes v. Yahoo! Inc.*) and breach its Terms of Service.
31. On **Information and Belief**, Meta's negligent system design foreseeably endangered Plaintiff's 11 state and federal licenses and caused irreparable reputational harm.

## 6. ARBITRATION OBJECTION

32. Plaintiff paid AAA $2,450 to initiate arbitration. Plaintiff sent multiple emails seeking responses with no answers. *(Exhibit F: Communications with AAA regarding fees, classification, and response)*
33. On **Information and Belief**, AAA acts as a gatekeeper to justice.
34. Meta's Terms of Service purport to invoke a "consumer rule," but AAA failed to honor its contractual obligations.
35. On **Information and Belief**, voiding arbitration in this case will prevent Meta from blocking individuals from seeking justice via fee-shifting mechanisms.
36. Plaintiff used his account personally and professionally. Meta's improper labeling and account termination caused direct economic, reputational, and emotional harm.

## 7. DECLARATORY RELIEF – ARBITRATION

37. Plaintiff has paid $2,450 in arbitration administrative fees.
38. Plaintiff sought clarification from AAA and received no substantive response.
39. The fees imposed exceed standard consumer filing fees.
40. Plaintiff used the Meta account primarily for personal and educational purposes.
41. The arbitration provision, as applied, imposes prohibitive costs and procedural barriers.
42. The provision is procedurally and substantively unconscionable.
43. Plaintiff requests a declaration that the arbitration clause is unenforceable as applied.

## 8. DAMAGES

44. As a direct and proximate result of Meta's actions, Plaintiff has suffered:
    a. Defamation per se damages, including destruction of professional reputation and credibility;
    b. Loss of business and income due to interference with fiduciary and mortgage operations;

    c. Emotional distress, anxiety, and reputational trauma, including impact on spouse and 7-month-old daughter;

    d. Statutory and potential punitive damages given Actual Malice and Intentional Misconduct.

45. Plaintiff seeks damages exceeding $100,000, exclusive of interest, costs, and attorneys' fees.

---

## 9. COUNTS

### COUNT I: DEFAMATION PER SE

46. Plaintiff realleges paragraphs 1–45.

47. On **Information and Belief**, Meta published false statements accusing Plaintiff of child sexual exploitation to third parties, including Plaintiff's spouse, CFPB, internal staff, and NCMEC.

48. On **Information and Belief**, this publication caused harm to Plaintiff's professional reputation, emotional distress, and family wellbeing, including impact on spouse and 7-month-old daughter.

49. On **Information and Belief**, Meta acted with Actual Malice and Intentional Misconduct, evidenced by automated reporting without verification and a seven-month delay in correcting false information.

### COUNT II: GROSS NEGLIGENCE (SYSTEM DESIGN)

50. Plaintiff realleges paragraphs 1–45.

51. On **Information and Belief**, Meta negligently designed an automated enforcement system that issued criminal labels without human verification, creating foreseeable harm to Plaintiff's licenses, career, family, and financial stability.

### COUNT III: INTENTIONAL MISCONDUCT (CFPB LIE)

52. Plaintiff realleges paragraphs 1–45.

53. On **Information and Belief**, Meta's September 19, 2025 statement to CFPB claiming a "further investigation" was conducted is false.

54. On **Information and Belief**, Meta knew or recklessly disregarded that no human review occurred, constituting Intentional Misconduct under Fla. Stat. § 768.72.

### COUNT IV: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

55. Plaintiff realleges paragraphs 1–45.

56. On **Information and Belief**, Meta's voluntary report to NCMEC and internal dissemination of false criminal allegations directly interfered with Plaintiff's fiduciary and mortgage business.

57. On **Information and Belief**, Meta's conduct was intentional, malicious, and done with reckless disregard for Plaintiff's professional licenses, livelihood, and family wellbeing.

### COUNT V: DECLARATORY RELIEF – ARBITRATION

58. Plaintiff realleges paragraphs 1–45.

59. The arbitration clause in Meta's Terms of Service is procedurally and substantively

unconscionable as applied to Plaintiff.

60. Plaintiff has incurred prohibitive fees and faced procedural barriers to justice.

61. Plaintiff requests a judicial declaration that the arbitration provision is unenforceable as applied.

## 10. PRAYER FOR RELIEF

62. Enter judgment against Meta for damages exceeding $100,000, exclusive of interest, costs, and attorneys' fees.

63. Award compensatory, actual, and punitive damages for Defamation Per Se, Gross Negligence, Intentional Misconduct, and Tortious Interference.

64. Award all applicable statutory damages, including those under Florida law, 18 U.S.C. § 2702, and 18 U.S.C. §§ 2258A-B.

65. Declare that Meta is not entitled to immunity under Section 230 or related statutes for the claims in this action.

66. Declare the arbitration clause in Meta's Terms of Service unenforceable as applied.

67. Award costs of litigation and attorneys' fees.

68. Grant such other relief as the Court deems just and proper.

## 11. JURY DEMAND

69. Plaintiff demands a trial by jury on all issues so triable.

## 12. EXHIBITS

- **Exhibit A:** Plaintiff Licenses
- **Exhibit B:** Spouse License
- **Exhibit C:** Meta Terms of Service, Accusation Email, Account Termination Notice
- **Exhibit D:** *Lawshe v. Verizon* (Case No. 3:24-cv-137-MMH-LLL).
- **Exhibit E:** Communications Plaintiff sent to clear his name
- **Exhibit F:** Communications with AAA regarding arbitration fees, classification, and response

Mina Awad
439 N Laurel Dr
Margate, FL 33063
954-446-4536
Minaawadny954@gmail.com



Ron DeSantis, Governor

Melanie S. Griffin, Secretary

# STATE OF FLORIDA

## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### DIVISION OF REAL ESTATE

THE BROKER HEREIN IS LICENSED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES



**AWAD, MINA FAWAZY**
439 N LAUREL DR
MARGATE        FL 33063

LICENSE NUMBER: BK3269643
EXPIRATION DATE:  SEPTEMBER 30, 2026

Always verify licenses online at MyFloridaLicense.com

ISSUED: 02/13/2026

Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.





**STATE OF TENNESSEE
DEPARTMENT OF
COMMERCE AND INSURANCE**



Mina Awad

ID NUMBER: 356772
LIC STATUS  ACTIVE
EXPIRATION DATE: July 08, 2026
**TENNESSEE REAL ESTATE COMMISSION**
**REAL ESTATE BROKER**

747954    THIS IS TO CERTIFY THAT ALL REQUIREMENTS
OF THE STATE OF TENNESSEE HAVE BEEN MET

CARRINGTON REAL ESTATE SERVICES (US), DBA LLC VYLLA HOME
c/oMina Awad
800 CRESCENT CENTRE DRIVE
SUITE 300
FRANKLIN, TN 37067

# State of Tennessee

**TENNESSEE REAL ESTATE COMMISSION**
**REAL ESTATE BROKER**
**MINA AWAD**

*This is to certify that all requirements of the State of Tennessee have been met.*

**ID NUMBER**: 356772
**LIC STATUS**: ACTIVE
**EXPIRATION DATE**: July 08, 2026

**IN-1313**
**DEPARTMENT OF**
**COMMERCE AND INSURANCE**

2/8/26, 2:42 PM                                    My PTIN Account Information - PTIN

Tax Pro PTIN System                                                    MENU

Home

My Account

Messages **3**

Actions/Requests

Chat with us

Logged in as Mina Awad, MINANY3@GMAIL.COM

Log Out

# My PTIN Account Information

Use this page to verify and update your PTIN information. It's important to keep this information up-to-date.

## Login Information

User ID: minany3@gmail.com
Email: minany3@gmail.com

Manage my profile

## PTIN Information

Mina Awad
P03112693
PTIN Status: Active
Active for 2026

## Account Actions

Preparer Directory Opt Out/In

Inactivate my PTIN

Chat with us

## Address Information                          Edit

439 N Laurel Dr
margate
margate, Florida 33063
+1 (954) 446-4536

## Business Information                Edit

TAX MADE EASY LLC
439 N LAUREL DR
MARGATE
MARGATE, Florida 33063

## Professional Credentials             Edit

- Enrolled Agent, United States
  00153764-EA, 03/31/2027, Active

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

**** FILED: BROWARD COUNTY, FL  Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM ****

2/8/26, 2:42 PM                                                My PTIN Account Information - PTIN

+1 (954) 446-4536                                              

IRS Privacy Policy  ☑

Accessibility Guide  ☑

PTIN Help Line & Web Chat  ☑

Frequently Asked Questions  ☑

2/8/26, 2:35 PM                                    Individual Summary

## My NMLS

Home    Personal Details    Company Access    **Licenses**    Relationships & Sponsorships

ADD NEW LICENSE

| License | Status | License Number | License Items | Actions ⚠ |
|---|---|---|---|---|
| Florida Mortgage Loan Originator License | Approved (as of 01/06/2021) | LO79841 | (1) | Surrender |
| Pennsylvania Mortgage Originator License | Approved (as of 02/21/2024) | 107737 | (1) | Surrender |
| Tennessee Mortgage Loan Originator License | Approved (as of 09/27/2023) | 1894769 | (0) | Surrender |
| Texas - SML Mortgage Loan Originator | Approved (as of 03/14/2025) | | (1) | Surrender |
| Virginia Mortgage Loan Originator License | Approved (as of 12/27/2023) | MLO-69544VA | (1) | Surrender |

▽

Full History

©2026 SRR | All Rights Reserved | SRR is a trademark of the State Regulatory Registry   **CSBS Privacy Policy** | **CFPB Privacy Policy**

https://gateway.statemortgageregistry.com/app/entity-profile/individual-profile?activeTab=licenses

1/2

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM ****

2/8/26, 2:35 PM

Individual Summary

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY



CHIEF FINANCIAL OFFICER
**BLAISE INGOGLIA**
STATE OF FLORIDA

## LETTER OF CERTIFICATION

02/08/2026

AWAD, MINA FAWAZY
439 N LAUREL DR
APT 6
MARGATE FL 33063

Re: AWAD, MINA FAWAZY
License Number: W317642

The above named currently holds a license for the following line(s) of insurance:

- **Licensee:** 2-20 GENERAL LINES (PROP & CAS)
  **Issued:** 04/14/2016
  **Appointed?** No
  Based on the licensee's last compliance date, the licensee is CE compliant for this license.

- **Licensee:** 6-20 ADJUSTER - ALL LINES
  **Issued:** 02/22/2024
  **Appointed?** No
  Based on the licensee's last compliance date, the licensee is CE compliant for this license.

The licensee has qualified for the above line(s) of insurance by examination, designation, or experience.

No person may act as, advertise, or hold himself or herself out to be an insurance agent or adjuster unless he or she is currently licensed by the department and appointed by an appropriate appointing entity or person.

An insurance agency location can only transact insurance in the lines of business that its agents are licensed and appointed to transact.

NO FURTHER LICENSE INFORMATION SHALL APPEAR BELOW THIS LINE

Florida Department of Financial Services
Division of Insurance Agent and Agency Services
Bureau of Licensing
www.MyFloridaCFO.com
200 East Gaines Street, Tallahassee, FL 32399-0318

# Florida Department of Financial Services

## INSURANCE LICENSE
### MINA FAWAZY AWAD
License Number: W317642

| | Issue Date |
| --- | --- |
| | 02/22/2024 |
| | 04/14/2016 |

**Resident Insurance License**
- 0620 - ADJUSTER ALL LINES
- 0220 - GENERAL LINES (PROP & CAS)

CHIEF FINANCIAL OFFICER
STATE OF FLORIDA

**Please Note:**
A licensee may only transact insurance with an active appointment by an eligible insurer or employer. If you are acting as a surplus lines agent, public adjuster, or reinsurance intermediary manager/broker, you should have an appointment recorded in your own name on file with the Department. If you are unsure of your license status you should contact the Florida Department of Financial Services immediately. This license will expire if more than 48 months elapse without an appointment for each class of insurance listed. If such expiration occurs, the individual will be required to re-qualify as a first-time applicant. If this license was obtained by passing a licensure examination offered by the Florida Department of Financial Services, the licensee is required to comply with continuing education requirements contained in 626.2815 or 648.385, Florida Statutes. A licensee may track their continuing education requirements completed or needed on their MyProfile account at https://dice.fldfs.com. To validate the accuracy of this license you may review the individual license record under "License Search" on the Florida Department of Financial Services website at www.myfloridacfo.com/division/agents.

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM ****



RETURN
PREPARER
OFFICE
INTERNAL REVENUE SERVICE

**Department of the Treasury**
**Internal Revenue Service**
Enrolled Agent Policy & Management
127 International Dr Room - EA125
Franklin, TN 37067

**Date:**
 10/31/2024
**Telephone:**
 855-472-5540
**Fax:**
 (855) 889-7959

Mina Awad
801 Del Rio Pike A15
Franklin, TN 37064

Dear Mina Awad:

We have approved your application for renewal of Enrolled Agent (EA) status. Your new enrollment card is below. Please write your enrollment number on any correspondence you send to our office.

Please see the information we've included below to help you understand your rights and keep your status as an EA.

**Where you can find your practice rights**
You have unrestricted practice rights and may represent clients on any matter before any IRS office. Treasury Department Circular 230, Regulations Governing Practice before the Internal Revenue Service, outlines your rights and responsibilities as an EA.

**How you can keep your EA status**
- Complete a minimum of 16 credit hours of continuing education (CE) courses per year, which must include 2 hours of ethics or professional conduct courses. For more information about requirements during your enrollment year, see Treasury Department Circular 230 Section 10.6(e)(2)(ii)(A)&(B) at **irs.gov/forms-pubs**.
- Complete a total of 72 CE credit hours every three years (this includes the minimum 16 hours per year).
- Use only IRS approved CE providers. You can find a list of approved providers by visiting **irs.gov/taxpros/ce**.

---

Form **24-B** (Rev. 4-2023)          Catalog Number 59883B          www irs gov          Department of the Treasury - **Internal Revenue Service**

**Enrollment to**
**Practice Before the**
**Internal Revenue**
**Service**

00153764-EA

**IRS**

This evidences that
 Mina Awad

is enrolled to practice before the Internal Revenue Service under 31 Code of
Federal Regulations Part 10 (Treasury Department Circular No. 230)

ISSUE DATE
 10/31/2024

Limitations on Practice, if any

EXPIRATION DATE
 03/31/2027

Letter 224-B (Rev. 2-2024)

Catalog Number 72963K

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM.****



Your license number is RN 9607067.

Please use it in all correspondence with your board/council. Each licensee is solely responsible for notifying the Department in writing of the licensee's current mailing address and practice location address. If you have not received your renewal notice 90 days prior to the expiration date shown on this license, please visit www.FLHealthSource.gov and click "Renew A License" to renew online.

The Medical Quality Assurance Online Services Portal gives you the ability to manage your license to perform address updates, name changes and much more.



STATE OF FLORIDA
DEPARTMENT OF HEALTH
DIVISION OF MEDICAL QUALITY ASSURANCE

| DATE | LICENSE NO. | CONTROL NO. |
|------|-------------|-------------|
| JULY 23, 2024 | RN 9607067 | 4004377 |

QUALIFICATION(S):
Multistate Registered Nurse

THE REGISTERED NURSE
NAMED BELOW HAS MET ALL REQUIREMENTS OF
THE LAWS AND RULES OF THE STATE OF FLORIDA.

EXPIRATION DATE: JULY 31, 2026

YULIA BOKK
NOT PRACTICING
ZZ

Ron DeSantis
GOVERNOR

Joseph A. Ladapo, MD, PhD
STATE SURGEON GENERAL

Scan QR Code for
License Authentication

DISPLAY IF REQUIRED BY LAW

STATE OF FLORIDA
DEPARTMENT OF HEALTH
DIVISION OF MEDICAL QUALITY ASSURANCE

| DATE | LICENSE NO. | CONTROL NO. |
|------|-------------|-------------|
| JULY 23, 2024 | RN 9607067 | 4004377 |

THE REGISTERED NURSE
NAMED BELOW HAS MET ALL REQUIREMENTS OF
THE LAWS AND RULES OF THE STATE OF FLORIDA.

YULIA BOKK

Expiration Date JULY 31, 2026

LICENSEE SIGNATURE

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM ****

# Meta Platforms, Inc. – Terms of Service

## Arbitration Provision (Excerpt)

You and Meta Platforms, Inc. agree that any dispute, claim, or controversy arising out of or relating to your use of Meta products or services shall be resolved exclusively through binding arbitration, rather than in court, except where prohibited by law. The arbitration shall be administered by the American Arbitration Association (AAA) in accordance with its Consumer Arbitration Rules. This arbitration agreement is binding on both parties and no separate submission agreement signed by Meta is required for enforcement.



## Action needed on your Facebook account
1 message

**Facebook** <security@facebookmail.com>                                    Wed, Jul 16, 2025 at 2:55 PM
Reply-to: noreply <noreply@facebookmail.com>
To: Mina Awad <minaawadny954@gmail.com>



### Mina, you have 180 days to take action.

Hi Mina,

Your Facebook account has been suspended. This is because your account, or activity on it, doesn't follow our Community Standards on child sexual exploitation.

If you think we suspended your account by mistake, you have 180 days to appeal our decision. If you miss this deadline your account will be permanently disabled.



**Mina Awad**



Appeal

You can learn more about why we suspend accounts by visiting the Community Standards.

Thanks,
The Facebook team

This message was sent to **minaawadny954@gmail.com** at your request.
Meta Platforms, Inc., Attention: Community Support, 1 Meta Way, Menlo Park, CA 94025

 Gmail

**mina rasm <minaawadny954@gmail.com>**

---

## Your Facebook account has been reviewed

---

**Meta Support** <noreply@support.facebook.com>
Reply-To: noreply <noreply@facebookmail.com>
To: Mina Awad <minaawadny954@gmail.com>

Wed, Jul 16, 2025 at 3:32 PM



### Your review was unsuccessful

Hi Mina,

Your Facebook account has been permanently disabled.

You requested a review of this decision, but we still found that your account, or activity on it, didn't follow our Community Standards. You can't request another review.

Learn more about why we disable accounts by visiting the Community Standards.



**Mina Awad**

Log into Facebook

Thanks,
The Facebook team

This message was sent to minaawadny954@gmail.com at your request.
Meta Platforms, Inc., Attention: Community Support, 1 Meta Way, Menlo Park, CA 94025

## EXHIBIT E: NOTICE OF SUPPLEMENTAL AUTHORITY

**Case Ref: Lawshe v. Verizon Communications Inc., No. 3:24-cv-137-MMH-LLL (M.D. Fla. Feb. 28, 2025)**

Plaintiff, MINA AWAD, hereby directs the Court's attention to the attached Order from the United States District Court for the Middle District of Florida. This 2025 ruling is directly on point regarding the use of automated hashing and the loss of statutory immunity for voluntary NCMEC reports.

### Key Findings Relevant to this Action:

- **Page 12: Mandatory vs. Optional Reports.** The Court concluded that immunity under 18 U.S.C. § 2258B extends **only** to disclosures a provider is *required* to make; "optional reports do not 'aris[e] from the performance' of 'reporting responsibilities'".
- **Page 18: The "Unconfirmed" AI Rule.** The Court held that a hash match tagged as **"unconfirmed"** does not necessarily trigger mandatory reporting under § 2258A(a). The judge noted that an "unconfirmed" tag only reveals that an image "could not be determined to be CSAM" (often because age cannot be verified) and is not enough for a provider to conclude a violation "appear[ed] likely".

  +1

- **Page 20: Loss of Immunity.** Because a report based on an "unconfirmed" match is considered a **voluntary disclosure**, the Court ruled that § 2258B **does not shield** providers from liability for claims like defamation.

  +2

- **Page 5: Factual Malice.** Similar to the allegations in this Complaint, the *Lawshe* defendants falsely stated they "had viewed the entire contents" of the image and that it depicted a minor, when a "bare review" showed the individuals were adults.

**Application to Plaintiff Awad:** Defendant Meta utilized the same automated hashing identified in *Lawshe*, relied on "unconfirmed" matches to issue a voluntary report, and published false criminal accusations without human review. Per the logic in **Exhibit E**, Meta has waived its statutory immunity and is liable for all damages.

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,

     Plaintiff,

v.                                                                Case No. 3:24-cv-137-MMH-LLL

VERIZON COMMUNICATIONS,
INC., and SYNCHRONOSS
TECHNOLOGIES, INC.,

     Defendants.

_____

## O R D E R

**THIS CAUSE** is before the Court on Defendant Synchronoss
Technologies, Inc.'s Motion to Dismiss Amended Complaint (Doc. 26;
Synchronoss's Motion), filed on April 12, 2024, and Defendant Verizon
Communications Inc.'s Rule 12(b)(6) Motion to Dismiss (Doc. 27; Verizon's
Motion), filed on April 12, 2024 (collectively Motions). In the Motions, invoking
Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), Defendants
seek dismissal of the claims in Plaintiff, William Lee Lawshe's, Amended
Complaint (Doc. 39; Second Amended Complaint).[1] Lawshe timely responded

---

[1] Defendants filed the Motions when an earlier pleading was the operative complaint.
See Amended Complaint (Doc. 22; First Amended Complaint), filed on March 11, 2024. The
Magistrate Judge directed Lawshe to file a second amended complaint because the First
Amended Complaint was not signed by an attorney and thus violated Rule 11(a). See
Endorsed Order (Doc. 38), entered on May 29, 2024. Lawshe corrected this error by filing the

in opposition to the Motions. See Plaintiff's Response to Verizon's Rule 12(b)(6) Motion to Dismiss (Doc. 28; Response to Verizon's Motion), filed on May 3, 2024; Plaintiff's Response to Synchronoss's Rule 12(b)(6) Motion to Dismiss (Doc. 30; Response to Synchronoss's Motion), filed on May 3, 2024.[2] With leave of Court, Defendants filed a joint reply in support of the Motions. See Endorsed Order (Doc. 34), entered on May 20, 2024; Defendants Verizon Communications Inc. and Synchronoss Technologies, Inc.'s, Joint Reply in Support of Rule 12(b)(6) Motions to Dismiss (Doc. 40; Reply), filed on June 3, 2024. Accordingly, this matter is ripe for review.

---

Second Amended Complaint, which is otherwise identical to the First Amended Complaint. After Lawshe filed the Second Amended Complaint, the Court gave the parties the opportunity to file any objections to the Court considering the Motions as directed at the Second Amended Complaint. See Order (Doc. 41), entered on June 5, 2024. No party objected. As such, the Court considers the Motions to be directed at the Second Amended Complaint.

[2] In the Response to Synchronoss's Motion, Lawshe purports to incorporate by reference the arguments he raises in his Response to Verizon's Motion. Response to Synchronoss's Motion at 1. In doing so, Lawshe violates Rule 3.01(f), Local Rules of the United States District Court for the Middle District of Florida (Local Rule(s)). Local Rule 3.01(f) provides: "A motion, other legal memorandum, or brief may not incorporate by reference all or part of any other motion, legal memorandum, or brief." The Court reminds all counsel of their obligation to review and comply with the Local Rules of this Court. In this instance, in the interests of judicial economy, the Court will accept the Response to Synchronoss's Motion and consider the arguments Lawshe raises in the Response to Verizon's Motion to be directed also to Synchronoss's Motion. Future violations of the Court's Local Rules, however, will not be permitted.

## I. Background[3]

As a Verizon customer, Lawshe stores legal pornographic pictures depicting consenting adult models on Verizon's cloud. Second Amended Complaint ¶¶ 7, 9, 10, 40, 44, 51, 54, 62(c), 83. Synchronoss is the data-storage subcontractor for Verizon's cloud services. Id. ¶¶ 6, 9. Verizon and Synchronoss use technology called "hashing" to determine whether any of the data they host is child sexual abuse material (CSAM). Id. ¶ 21. Hashing involves using algorithms to compare an image's "hash value" or "hash" to a list of hashes previously identified as actual or possible CSAM. Id. ¶¶ 21–24. A hash is a digital fingerprint for an image, and if two images share the same hash, they are almost certain to be identical images. Id. ¶¶ 22, 28. Like many others in the industry, Verizon and Synchronoss maintain lists of hashes that have been flagged as possible or alleged CSAM. Id. ¶¶ 23, 24, 31. By comparing the hashes of their customers' files to the flagged hashes in their lists, Verizon and Synchronoss can determine with a high degree of confidence whether a customer is storing an image that has been previously flagged as

---

[3] In considering the Motions, the Court must accept all factual allegations in the Second Amended Complaint as true, consider the allegations in the light most favorable to Lawshe, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Second Amended Complaint and may well differ from those that ultimately can be proved.

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM ****

actual or possible CSAM. Id. ¶¶ 24, 28, 31. However, the process of flagging images is "largely unregulated," and an image can be flagged after "customer complaints" or reports from law enforcement. Id. ¶¶ 26, 27. When an image is flagged, the flag can include a "tag" for a particular category of image. Id. ¶¶ 31, 48, 81. The lists maintained by Verizon and Synchronoss rely entirely on tags provided by third parties including The National Center for Missing and Endangered Children (NCMEC) and law enforcement agencies. Id. ¶ 70. NCMEC, an organization tasked by statute with collecting and reporting information on online CSAM, uses tags including "unconfirmed" and "apparent" CSAM. Id. ¶¶ 31, 48, 81; see generally 34 U.S.C. § 11293(b)(1)(K). When Synchronoss or Verizon find a hash match, they send reports of the match (CyberTips) to NCMEC "instantly," without human review or collecting any information about the subject images other than what the hash match itself provides. Second Amended Complaint ¶¶ 62(a), 63, 66.

Sometimes, Defendants' hashing process flags images that are not CSAM. Id. ¶¶ 40, 41, 49, 62(c), 78, 79, 83, 88. Yet Defendants either have "no plan or process to determine" whether hash-matched images are CSAM, or they do not use such a plan. Id. ¶¶ 45, 46. On October 29, 2022, Synchronoss reported to NCMEC (the First CyberTip) that Lawshe possessed a file flagged as "apparent" CSAM (the First Image). Id. ¶ 81. The First Image was not

CSAM. <u>Id.</u> ¶ 83. On January 25, 2023, Defendants' hashing process determined that one of Lawshe's photos was a hash match with an image NCMEC categorized as "unconfirmed" CSAM (the Second Image). <u>Id.</u> ¶¶ 47, 48. Synchronoss reported the Second Image to NCMEC the same day (the Second CyberTip). <u>Id.</u> ¶ 58. In the Second CyberTip, Synchronoss stated that it "had viewed the entire contents" of the Second Image, that the Second Image "was not available publicly," and that the Second Image "contained the lascivious exhibition of a 'pre-pubescent' minor." <u>Id.</u> ¶ 61. None of these statements were true. <u>Id.</u> ¶¶ 49, 62. Indeed, the individuals depicted in both the First and Second Images "were easily identifiable as adults by the barest of review … ." <u>Id.</u> ¶ 44; <u>see also id.</u> ¶ 54.[4]

---

[4] Verizon asks the Court to take judicial notice of alleged facts contained in documents filed in a different lawsuit Lawshe brought against different defendants. <u>See</u> Verizon's Motion at 3 n.1, 5–6, 14–15; <u>see also</u> Response to Verizon's Motion at 6. Courts may take judicial notice of documents from a prior proceeding because they are matters of public record and "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." <u>Horne v. Potter</u>, 392 F. App'x 800, 802 (11th Cir. 2010) (internal quotation marks and quoted authority omitted). However, a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." <u>United States v. Jones</u>, 29 F.3d 1549, 1553 (11th Cir. 1994) (internal quotation marks and quoted authority omitted). Therefore, although the Court will take judicial notice of the docket and documents filed to determine that such documents were filed and that the parties and the court took certain actions, it will not take notice of the facts contained or alleged within those documents. <u>See id.</u>; <u>see also</u> <u>Kruse, Inc. v. Aqua Sun Invs., Inc.</u>, No. 6:07-cv-1367-Orl-19UAM, 2008 WL 276030, at *3 n.2 (M.D. Fla. Jan. 31, 2008) ("Pursuant to Federal Rule of Evidence 201, the Court is taking judicial notice of the state case and its docket entries[,] … but not of the facts contained in those documents.").

In citing to <u>Horne</u>, the Court notes that the Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–

NCMEC relayed both CyberTips to law enforcement. Id. ¶¶ 72, 84, 100. After receiving the Second CyberTip, "law enforcement obtained a subpoena to search virtually all of [Lawshe's] personal digital information and content." Id. ¶ 72. The Second CyberTip led to Lawshe's arrest. Id. ¶¶ 61(c), 72, 97, 101. Lawshe now brings claims against Verizon and Synchronoss for defamation and for violations of the Stored Communications Act, as amended, 18 U.S.C. § 2701 et seq., which prohibits companies like Verizon and Synchronoss from disclosing customer data unless an exception applies. See id. at 12–21; see also 18 U.S.C. §§ 2702, 2707.[5] Defendants contend Lawshe's claims must be dismissed because the claims fail as a matter of law under the relevant statutory provisions, including provisions of the Protect Our Children

---

61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[5] Lawshe brings claims in eight counts, one for each combination of the cause of action, Defendant, and individual disclosure. See Second Amended Complaint at 12–21. In Count I, Lawshe brings a defamation claim against Verizon for the disclosure of Image Two. Id. ¶¶ 102–111. In Count II, Lawshe brings a defamation claim against Verizon for the disclosure of Image One. Id. ¶¶ 112–121. In Count III, Lawshe brings a defamation claim against Synchronoss for the disclosure of Image Two. Id. ¶¶ 122–126. In Count IV, Lawshe brings a defamation claim against Synchronoss for the disclosure of Image One. Id. ¶¶ 127–131. In Count V, Lawshe brings a claim under 18 U.S.C. § 2702 against Verizon for the disclosure of Image Two. Id. ¶¶ 132–140. In Count VI, Lawshe brings a claim under 18 U.S.C. § 2702 against Verizon for the disclosure of Image One. Id. ¶¶ 141–149. In Count VII, Lawshe brings a claim under 18 U.S.C. § 2702 against Synchronoss for the disclosure of Image Two. Id. ¶¶ 150–154. And in Count VIII, Lawshe brings a claim under 18 U.S.C. § 2702 against Synchronoss for the disclosure of Image One. Id. ¶¶ 155–159.

Act of 2008, as amended (PROTECT Act), 18 U.S.C. § 2258A et seq. See generally Verizon's Motion; Synchronoss's Motion.[6]

## II.     Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[6] Defendants do not contend that Lawshe fails to state claims for defamation. For purposes of resolving the Motions, the Court assumes but does not decide that Lawshe's allegations in the Second Amended Complaint plausibly state claims for defamation.

- 7 -

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has failed to meet their pleading burden under Rule 8. Id. at 679.

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (quotation marks and quoted authority omitted)). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).[7]

---

[7] The Court notes that, in his Response to Verizon's Motion, Lawshe cites Hishon v. King & Spaulding, 467 U.S. 69 (1984), for the proposition that "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could

## III. Discussion

### A. The Protect Our Children Act of 2008

### i. Interpreting the Relevant Statutory Provisions

Under 18 U.S.C. § 2258A, "providers" like Verizon and Synchronoss must issue CyberTips to the "CyberTipline of NCMEC" when they find CSAM on their platforms. 18 U.S.C. § 2258A(a)(1)(B).[8] Providers must satisfy this obligation "as soon as reasonably possible after obtaining actual knowledge of any facts or circumstances ... from which there is an apparent violation" of CSAM laws. 18 U.S.C. § 2258A(a). A CyberTip must describe "such facts or circumstances," and at the provider's discretion, may include additional

---

be proven consistent with the allegations." See Response to Verizon's Motion at 4. This is the standard the Supreme Court articulated in Conley v. Gibson, 355 U.S. 41 (1957). See Hishon, 467 U.S. at 73 (citing Conley, 355 U.S. at 45–46). Such an argument is shocking given that in 2007 the Supreme Court issued the Twombly decision in which it explicitly retired Conley's "no set of facts" test, stating that the phrase is "best forgotten as an incomplete, negative gloss on an accepted pleading standard ... ." See Twombly, 550 U.S. at 563. The Supreme Court further clarified the pleading standard and emphasized Conley's demise in its 2009 Iqbal decision. See Iqbal, 556 U.S. at 670. Nevertheless, despite the passage of over seventeen years since the Twombly decision, and over fifteen years since Iqbal, as well as the abundance of Eleventh Circuit precedent citing those decisions, Lawshe has included Conley in his Response to Verizon's Motion with apparently no effort to cite currently applicable legal authority. See Response to Verizon's Motion at 4 (citing no case more recent than 2005 in the "Standard on a Motion to Dismiss" section). Counsel is cautioned that his duty of candor to the Court includes the obligation to assure the continuing viability of any authority cited to the Court.

[8] A "provider" is "an electronic communication service provider or remote computing service." 18 U.S.C. § 2258E. No party disputes that Verizon and Synchronoss are providers.

- 9 -

information, including identifying information for the apparent violator, historical information, geolocation information, and the subject images. 18 U.S.C. § 2258A(a)(1)(B)(ii), 2258A(b). Upon receipt of a CyberTip, NCMEC reviews the report and must then forward it to an appropriate law enforcement agency. 18 U.S.C. § 2258A(c). A provider that "knowingly and willfully fails to make a report" as required under subsection (a) faces a fine up to hundreds of thousands of dollars. 18 U.S.C. § 2258A(e).

Providers are not, however, required to put in any effort whatsoever to identify CSAM on their platforms. In a subsection captioned "Protection of Privacy," Congress has directed that:

Nothing in [§ 2258A] shall be construed to require a provider to—
(1) monitor any user, subscriber, or customer of that provider;
(2) monitor the content of any communication of any person described in paragraph (1); or
(3) affirmatively search, screen, or scan for facts or circumstances described in [sub]sections (a) and (b).

18 U.S.C. § 2258A(f). Still, § 2258C authorizes providers and NCMEC to coordinate efforts to combat CSAM. Section 2258C permits NCMEC to share hash values associated with CyberTips with providers, and providers may use these hash values "for the sole and exclusive purpose of permitting that provider to stop the online sexual exploitation of children." 18 U.S.C. § 2258C(a). Consistent with § 2258A(f), § 2258C(c) reiterates that nothing in the section "requires providers receiving [hashes] relating to any CyberTip[]

- 10 -

from NCMEC to use the [hashes] to stop the online sexual exploitation of children." 18 U.S.C. § 2258C(c).

Turning to the heart of the parties' dispute, in § 2258B, the PROTECT Act gives providers limited immunity. Unless an exception applies, "a civil claim ... against a provider ... arising from the performance of the reporting or preservation responsibilities of such provider ... under [§ 2258B], [§] 2258A, or [§] 2258C may not be brought in any Federal or State court." 18 U.S.C. § 2258B(a). That immunity, however, does not apply when the provider "engaged in intentional misconduct" or acted or failed to act "with actual malice[,] with reckless disregard to a substantial risk of causing physical injury without legal justification[,] or for a purpose unrelated to the performance of any responsibility or function under [§§] 2258A, 2258C, 2702, or 2703." 18 U.S.C. § 2258B(b) (subsection identifiers omitted). Verizon and Synchronoss contend that they benefit from § 2258B immunity for their disclosures to NCMEC of the hash matches for the subject images and, as such, that Lawshe's claims must be dismissed. See generally Motions. Lawshe disagrees, contending that the disclosures do not satisfy the requirements of § 2258B immunity, and that even if they do, an exception to immunity applies. See generally Responses.

- 11 -

To determine if Defendants are entitled to immunity under § 2258B, the Court must determine whether the reports about which Lawshe complains constitute conduct "arising from the performance" of Defendants' "reporting responsibilities." See 18 U.S.C. § 2258B(a). As a preliminary matter, the Court concludes that, as relevant to immunity based on § 2258A(a) disclosures, immunity extends only to those disclosures which a provider is required to make—optional reports do not "aris[e] from the performance" of "reporting responsibilities." See id. As discussed above, the § 2258A(a) reporting responsibilities of a provider such as Verizon or Synchronoss require the submission of CyberTips to NCMEC when the provider has "actual knowledge of any facts or circumstances … from which there is an apparent violation" of federal CSAM laws. See 18 U.S.C. § 2258A(a). Unhelpfully, the PROTECT Act does not define what constitutes an "apparent violation" of federal CSAM laws. See 18 U.S.C. § 2258A et seq.

Lawshe contends that the word "apparent" in § 2258A has a technical meaning ("certain") because in the CSAM-detection industry, "apparent CSAM" means content that is "certain, clear, or overtly clear" CSAM. See Response to Verizon's Motion at 5, 7. As a general matter, courts "normally interpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment." Bostock v. Clayton Cnty., 590 U.S. 644, 654 (2020).

- 12 -

However, sometimes Congress employs "terms of art," and courts are tasked with determining from context whether Congress intended a term to carry its ordinary meaning or a technical, legal meaning. See United States v. Hansen, 599 U.S. 762, 770–78 (2023) (holding that the context of the words "encourages or induces" indicated "that Congress used them as terms of art" with specialized meaning in criminal statutes). The phrases "apparent CSAM" and "apparent child pornography" are not found in the PROTECT Act or in the criminal statutes addressing CSAM crimes. Other than the fact that the word "apparent" is used in both phrases, there is no context to indicate that Congress had the term "apparent CSAM" in mind when referring to an "apparent violation" in § 2258A(a). Neither "apparent violation" nor "apparent CSAM" are defined in the edition of Black's Law Dictionary contemporary with the PROTECT Act's passage, and the pertinent edition of Black's Law Dictionary provides two definitions of "apparent" which are both consistent with ordinary meaning. See Apparent, Black's Law Dictionary (8th ed. 2004) ("1. Visible; manifest; obvious. 2. Ostensible; seeming"). As such, the Court will look to the ordinary meanings of the phrase "apparent violation."

In ordinary use, the word "apparent" can have either a narrow meaning or a broad one. Apparent can narrowly mean openly or manifestly so, or more broadly mean seeming to be so yet perhaps not actually so. Compare Apparent

(1), (2), Merriam-Webster, https://www.merriam-webster.com/dictionary/apparent, accessed on February 28, 2025, ("open to view" or "clear or manifest to the understanding"), with id. (3), (4) ("appearing as actual to the eye or mind" or "manifest to the senses or mind as real or true on the basis of evidence that may or may not be factually valid"). The parties have provided no authority, and the Court has located none other than dicta, that defines the term "apparent violation" as it is used in § 2258A(a). Compare United States v. Lowers, 715 F. Supp. 3d 741, 754 n.4 (E.D.N.C. 2024) (stating in dicta, without elaboration, that "[i]t would defy logic for Congress to require [a provider] to report to NCMEC media that is seemingly [CSAM], but not necessarily so" (internal quotation marks and quoted authority omitted)), with Meta Platforms, Inc. v. District of Columbia, 301 A.3d 740, 750 (D.C. 2023) (stating what is likely dicta that "providers must disclose to [NCMEC] any communications that they become aware of which indicate a violation of various laws against [CSAM]").[9] The Court need not and does not decide how to resolve the ambiguity in the phrase "apparent violation" in § 2258A(a)

---

[9] In citing to Lowers, the Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

because, for the reasons explained below, the resolution of the Motions does not depend on which meaning is applied.

ii. Applying § 2258A(a) to the First and Second CyberTips

Defendants contend that a hash match always constitutes "facts or circumstances from which there is an apparent violation" of federal CSAM laws. See Synchronoss's Motion at 6; Verizon's Motion at 12–14. The Court finds that a more precise approach is appropriate, considering that the hash matches for Image One and Image Two contained different tags, thereby giving Defendants knowledge of different information.[10] In particular, Lawshe alleges that NCMEC's tag on Image One identified the image as "apparent CSAM," while NCMEC's tag on Image Two identified the image as "unconfirmed." Second Amended Complaint ¶¶ 48, 81. The parties agree that "apparent CSAM" is a term of art in the industry that is applied to content when it is "certain, clear, or overtly clear" that a child is depicted in the image. See Response to Verizon's Motion at 5, 7; Reply at 2. Lawshe contends, and Defendants do not dispute, that the tag "unconfirmed," on the other hand, refers to an image depicting individuals whose ages cannot be readily

---

[10] Lawshe's allegations in the Second Amended Complaint do not make it clear whether Defendants' hash databases include the NCMEC tags assigned to the hash. See generally Second Amended Complaint. Drawing all reasonable inferences in Lawshe's favor, the Court will assume that Defendants' database does tell Defendants what tag NCMEC assigned to the hash before Defendants submit the CyberTip.

- 15 -

determined. <u>See</u> Response to Verizon's Motion at 5, 9; <u>see generally</u> Motions; Reply.

As to Image One, Lawshe acknowledges that Synchronoss and Verizon, through hashing, obtained knowledge that NCMEC categorized one of Lawshe's images as "certain, clear, or overtly clear" CSAM. <u>See</u> Response to Verizon's Motion at 5, 7; Second Amended Complaint ¶ 81. Even applying the narrow definition of "apparent" as "manifest," <u>see</u> Apparent (2), Merriam-Webster, this would be a "circumstance" in which there is an "apparent violation" of CSAM laws. To conclude otherwise would frustrate Congress's purposes in enacting § 2258A by practically requiring providers that wish to detect CSAM on their platforms to commit the acts constituting the subject offense that Congress seeks to prevent. <u>See</u> 18 U.S.C. § 2252A(a)(5) (imposing criminal penalties on anyone who "knowingly accesses with intent to view ... any ... material that contains an image of [CSAM]" that has been transported or produced with a computer). While caselaw is sparse in this area, in the Fourth Amendment context, courts have found that when a hash match to "known" or apparent CSAM is reported to law enforcement, no Fourth Amendment search takes place if a law enforcement officer opens the subject file because, in opening the file, law enforcement obtains no more information than was already provided by the hash match. <u>See, e.g.,</u> United

States v. Reddick, 900 F.3d 636, 638–40 (5th Cir. 2018); Lowers, 715 F. Supp. 3d at 756–58.

The Court recognizes, as Lawshe's allegations in the Second Amended Complaint demonstrate, a hash match to "apparent CSAM" does not establish with absolute certainty that an image is in fact CSAM. But even the narrow definition of "apparent" as "manifest" allows for the possibility of a false positive. If Congress had intended to mandate reporting only for actual CSAM, it could have specified as much. See N.L.R.B. v. SW Gen., Inc., 580 U.S. 288, 301 (2017) (explaining that Congress's choice not to adopt a "readily available" alternative wording "strongly support[ed]" the conclusion that the alternative meaning does not apply). Accordingly, Defendants were required to send a CyberTip to NCMEC regarding Image One, and § 2258B immunity shields them from legal claims arising from the performance of their "reporting responsibilities." The claims based on the First CyberTip (Counts II, IV, VI, and VIII) are due to be dismissed.[11]

---

[11] Lawshe attempts to raise two additional arguments to save these claims from dismissal, but neither succeeds. First, Lawshe argues that the exceptions to immunity in § 2258B(b) save his claims as to the First CyberTip. Response to Verizon's Motion at 14–17. But Lawshe's allegations are not enough to permit the reasonable inference that, in submitting the (ultimately false) First CyberTip, Verizon or Synchronoss engaged in "intentional misconduct" or acted "with actual malice." Indeed, the Second Amended Complaint is devoid of any factual allegations which shed light on Verizon and Synchronoss's motives in submitting the First CyberTip or their subjective beliefs regarding the veracity of the statements made in the First CyberTip. Lawshe's analogy to a person who, knowing that one in ten packages contains a bomb, mails all ten packages anyway, is

- 17 -

As to Image Two and the Second CyberTip, however, the Court concludes that the hash match did not necessarily trigger Defendants' reporting responsibilities under § 2258A(a). Drawing all reasonable inferences in Lawshe's favor, the tag of "unconfirmed" CSAM in this case revealed only that, at some unidentified point in the past, an unidentified person at NCMEC, using unknown methods, flagged Image Two as an image that could not be determined to be CSAM (presumably because the person reviewing the image could not tell if the individual depicted was a minor). See Second Amended Complaint ¶ 48. While this could have alerted Defendants to a possible violation of CSAM laws, without more, this is not enough information for Defendants to conclude that a violation of CSAM laws "appear[ed] likely."

---

inapplicable to the facts alleged in the Second Amended Complaint. See Response to Verizon's Motion at 14–15. While Lawshe alleges that Synchronoss submits tens of thousands of CyberTips per year, he includes no facts from which any inference can be drawn as to the rate of false positives. His vague allegations that "some" or "a substantial percentage" of hash matches are false positives lack the specificity required to raise an inference of intentional misconduct or malice. See Second Amended Complaint ¶¶ 40, 41, 78, 79. Notably, he identifies only one other specific instance of a CyberTip with a false positive. Id. ¶ 88.

Second, Lawshe contends that an algorithmic hash match cannot constitute "actual knowledge" of anything because a hash match does not involve "a sentient human being." See Response to Verizon's Motion at 7–8. To support this contention, Lawshe cites to United States v. Ackerman, 831 F.3d 1292 (10th Cir. 2016) (Gorsuch, J.) and United States v. Montijo, No. 2:21-cr-75-SPC-NPM, 2022 WL 93535 (M.D. Fla. Jan. 10, 2022). Yet neither of these cases even mentions what is required for a corporation to obtain "actual knowledge." As such, the Court concludes that Lawshe has not sufficiently raised this argument and considers the argument no further.

Indeed, even under Defendants' proposed broad definition of "apparent" as "something that seems to be, or something that appears likely," see Synchronoss's Motion at 7; Verizon's Motion at 11–12, knowledge that Lawshe possessed an image that is "unconfirmed" CSAM alone would not be knowledge of an "apparent violation" of CSAM laws. As such, at this early stage in the proceedings, the Court cannot say that knowledge of an "unconfirmed" CSAM tag match is "knowledge of the facts or circumstances from which there is an apparent violation" of CSAM laws.[12] Taking Lawshe's allegations as true, he plausibly alleges that the Second CyberTip was a voluntary disclosure made as a result of Defendants' voluntary efforts to net CSAM. Accordingly, relying on the allegations in the Second Amended Complaint, Defendants' report of the hash match for Image Two did not "arise from the performance" of their "reporting responsibilities" under § 2258A, and

---

[12] The Court is unaware of any case in which a court has determined whether an "unconfirmed" tag gives rise to reporting responsibilities under § 2258A(a). Ostensibly importing the industry term "apparent CSAM" into the statutory phrase "apparent violation," some courts suggest that only hash matches tagged as "apparent" CSAM trigger the reporting requirement. See, e.g., United States v. Sykes, No. 3:18-cr-178-TAV-HBG, 2020 WL 8484917, at *10 (E.D. Tenn. Oct. 5, 2020), report and recommendation adopted, No. 3:18-cr-178-TAV-HBG, 2021 WL 165122 (E.D. Tenn. Jan. 19, 2021), aff'd, 65 F.4th 867 (6th Cir. 2023) (stating in what is likely dicta that "the mandatory reporting requirements apply only to apparent images of child pornography").

§ 2258B does not shield them from potential liability for the claims in Counts

I, III, V, and VII, which stem from the Second CyberTip.[13]

---

[13] One of the more in-depth discussions of NCMEC's process for adding tags is found in United States v. Williamson, No. 8:21-cr-355-WFJ-CPT, 2023 WL 4056324, at *1–3 (M.D. Fla. Feb. 10, 2023), report and recommendation adopted, No. 8:21-cr-355-WFJ-CPT, Doc. 144 (M.D. Fla. Mar. 21, 2023). In Williamson, the Magistrate Judge held an evidentiary hearing on a criminal defendant's motion to suppress evidence law enforcement obtained from an NCMEC report. Id. at *1. At the hearing, "the Executive Director of NCMEC's Exploited Children Division, ... a Yahoo legal services manager, ... a former Yahoo employee, ... and [a law enforcement officer] all testified." Id. Relying on this testimony, in a Report and Recommendation to the assigned District Judge, the Magistrate Judge recommended the finding that:

> NCMEC applies the label of apparent child pornography to an image when it believes the activity depicted in the photograph "meets the federal definition of child pornography" and it is "overtly clear" a child is involved in that activity. By contrast, NCMEC employs the label of child pornography unconfirmed when it believes "the activity depicted ... appears to meet the federal definition of child pornography" but "there may be [a] question of the age of the individual seen in that particular image." NCMEC only places an image on its CSAM hash list if the file was reviewed by at least two of its analysts and the analysts reached the same conclusion.

> NCMEC, however, does not view its designations to be definitive, nor does it consider itself "the determiner[] of what is illegal or legal content." As explained by Ms. Newman, who has worked at NCMEC for twenty-one years, including as a CyberTipline analyst, NCMEC's classification of an image amounts to "an educated and informed impression of what is being depicted," and NCMEC relies on law enforcement to do its own independent "investigation and assessment" of a file.

Id. at *3 (alteration in original) (footnote and citations to the hearing transcript omitted). The District Judge adopted the Report and Recommendation as the opinion of the Court. See Amended Order (M.D. Fla. No. 8:21-cr-355-WFJ-CPT Doc. 144), entered on March 21, 2023. If true, these facts could support Defendants' contention that the hash match for Image Two constitutes "facts or circumstances" of an "apparent violation" of CSAM laws. But the Court is limited to the facts Lawshe alleges in the Second Amended Complaint and to the reasonable inferences that can be drawn from those allegations and cannot take judicial notice of facts found by a court in a different proceeding.

To the extent Defendants argue that requiring additional investigation into images tagged as "unconfirmed" CSAM would chill providers' content moderation and undermine Congressional intent, a review of § 2258A caselaw reveals that image-by-image human review is not uncommon. See, e.g., Sykes, 2020 WL 8484917, at *3, *12 (Facebook reviews the entire file before sending a CyberTip); United States v. Miller, No. CR 16-47-ART-CJS, 2017 WL 9325815, at *1 (E.D. Ky. May 19, 2017), report and recommendation adopted, No. CV 16-47-DLB-CJS, 2017 WL 2705963 (E.D. Ky. June 23, 2017), aff'd, 982 F.3d 412 (6th Cir. 2020) (Google employees view images before adding apparent CSAM tags); United States v. Hart, 3:cr-20-197, 2021 WL 2412950, at *10 (M.D. Pa. June 14, 2021) (Kik employees view images before sending CyberTips); Ackerman, 831 F.3d at 1294 (AOL employees view images before adding CSAM tags); United States v. Brillhart, No. 2:22-cr-53-SPC-NPM, 2023 WL 3304278, at *2 (M.D. Fla. May 7, 2023) (Yahoo employees view images before sending CyberTips); Williamson, 2023 WL 4056324, at *2 (same); United States v. DiTomasso, 81 F. Supp. 3d 304, 306 (S.D.N.Y. 2015), aff'd, 932 F.3d 58 (2d Cir. 2019) (human reviewers view images before Omegle sends CyberTips); but see Reddick, 900 F.3d at 637–38 (Microsoft uses an automated process to send CyberTips based on hash matches to "known" CSAM); United States v. Crawford, No. 3:18 CR 435, 2019 WL 3207854, at *2

(N.D. Ohio July 16, 2019) (Synchronoss uses a fully automated process to send CyberTips and sends CyberTips based on hash matches to "suspected" CSAM). Certainly, the Court recognizes that minimizing the number of people who view CSAM is a paramount concern—but when all a provider knows about a customer's image is that it depicts an individual of indeterminate age, some level of further investigation is appropriate before a provider is shielded from liability for reporting its customer's private information to the government.

Last, while Defendants contend that permitting Lawshe's claims regarding Image Two to proceed would destroy the immunity provided by Congress, which, they say, is "'clearly'" designed to "'immuniz[e] civil claims for mistaken and incorrect reports,'" see Synchronoss's Motion at 5; Verizon's Motion at 9 (quoting United States v. Richardson, 607 F.3d 357, 367 (4th Cir. 2010)), Defendants conflate an intent to immunize mistaken reports with an intent to immunize unfounded reports. As to Image Two, the issue is not whether Defendants were mistaken as to its contents, but whether given the information they had, Defendants possessed actual knowledge of facts or circumstances constituting an apparent violation of CSAM laws. Here, Lawshe plausibly alleges that a hash match to "unconfirmed" CSAM without anything more constitutes an unfounded report because Defendants did not

- 22 -

have actual knowledge triggering their reporting responsibilities under § 2258A(a).

Yet even if Defendants were arguably obligated to disclose Lawshe's possession of Image Two based on the hash match to "unconfirmed" CSAM, Lawshe has adequately alleged facts to support application of the "actual malice" exception to § 2258B immunity. <u>See</u> 18 U.S.C. § 2258B(b). In the context of defamation, "actual malice" means "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 280 (1964). The circumstances Lawshe alleges about the Second CyberTip support a reasonable inference that Defendants acted with reckless disregard as to the truthfulness of the statements they made in the Second CyberTip. Indeed, Lawshe alleges that Defendants made several unequivocally false statements in the Second CyberTip. In the Second CyberTip, Defendants stated that they "viewed the entire contents" of Image Two, that the image "was not available publicly," and that "the image contained the lascivious exhibition of a 'pre-pubescent' minor." Second Amended Complaint ¶ 61. Yet Lawshe alleges that Image Two was watermarked by a public website, <u>id.</u> ¶ 54(a), and that the individual depicted in Image Two was "easily identifiable as [an] adult[] by the barest of review," <u>id.</u> ¶ 44. These allegations suggest that Defendants did not in fact

- 23 -

view Image Two before submitting the Second CyberTip. Drawing all reasonable inferences in Lawshe's favor, as the Court must, Defendants' willingness to make false statements that they viewed Image Two, that it was not publicly available, and that it contained the lascivious exhibition of a prepubescent minor would plausibly support a finding that Defendants willfully disregarded the risk that the contents of the Second CyberTip were defamatory. Accordingly, even if Defendants were obligated to disclose Lawshe's possession of Image Two based on its "unconfirmed" hash match, Lawshe has adequately alleged that Defendants acted with actual malice as to the defamatory nature of the statements made in the Second CyberTip. For all of the foregoing reasons, to the extent Defendants seek dismissal of Counts I, III, V, and VII based on § 2258B immunity, the Motions are due to be denied.

B.      The Stored Communications Act

Verizon and Synchronoss contend that Lawshe's remaining claims arising from the Second CyberTip under the Stored Communications Act (Counts V and VII) are due to be dismissed because § 2702 explicitly permits providers to make the disclosures about which Lawshe complains. Verizon's Motion at 18–19; Synchronoss's Motion at 11–12. Section 2702 provides that, unless an exception applies, a provider may not disclose to any third party the contents of one of its customer's communications or stored data (records). 18

- 24 -

U.S.C. § 2702(a). One of the statutory exceptions is that a provider may disclose such communications and records "to [NCMEC], in connection with a report submitted thereto under [§] 2258A." 18 U.S.C. § 2702(b)(7), 2702(c)(5). Notably, § 2707 provides a civil action to individuals whose records or communications have been wrongfully disclosed under § 2702. See 18 U.S.C. § 2707.

Verizon and Synchronoss suggest that the § 2702 statutory exception applies to all disclosures made to NCMEC. See Verizon's Motion at 18–19; Synchronoss's Motion at 11–12. But Defendants' singular focus on the recipient of the disclosure without considering the content and basis of the disclosure is at odds with the text of § 2702. It is true that for the exception to apply, NCMEC must be the recipient; but the disclosure also must be made "in connection with a report submitted thereto under [§] 2258A." 18 U.S.C. § 2702(b)(6). And as the Court already discussed, § 2258A addresses mandatory reporting—nothing in § 2258A authorizes a provider to make disclosures to NCMEC outside of its mandatory reporting responsibilities. See 18 U.S.C. § 2258A. To read § 2702 as Defendants suggest would permit a provider to disclose the entirety of its customers' stored data and communications to NCMEC. Nothing in the language of the statute supports such a conclusion. As such, the Court determines that the exceptions for

- 25 -

reports to NCMEC in § 2702 are coextensive with providers' reporting responsibilities under § 2258A. Accordingly, the Court concludes that, with regard to the Second CyberTip, Lawshe has sufficiently stated claims under §§ 2702 and 2707 in Counts V and VII.

   C.   The Good-Faith Defense Under 18 U.S.C. § 2707(e)

   Last, Defendants contend Lawshe's claims must be dismissed because Defendants have a defense under § 2707(e). See Verizon's Motion at 17–18; Synchronoss's Motion at 10. Section 2707(e) states that "[a] good faith reliance on ... a statutory authorization ... is a complete defense to any civil or criminal action brought under this chapter or any other law." 18 U.S.C. § 2707(e). Although Defendants call this defense an "immunity," that characterization is belied by the plain language of § 2707(e), which calls it a "defense." "[G]enerally, the existence of an affirmative defense will not support a rule 12(b)(6) motion to dismiss for failure to state a claim." Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir. 1993). But "[a] district court ... may dismiss a complaint on a rule 12(b)(6) motion 'when [the plaintiff's] own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.'" Id. (quoted authority omitted). Notably, the viability of a § 2707(e) defense depends on a fact: the defendant's subjective reliance on a statutory authorization. Here,

- 26 -

Defendants' subjective reliance on authorization under § 2702, § 2258A, or § 2258B does not clearly appear on the face of the Second Amended Complaint. Accordingly, the Court concludes that the Motions are due to be denied to the extent Defendants rely on the § 2707(e) defense with regard to the claims in Counts V and VII.

## IV.    Conclusion

The Motions are due to be granted as to Lawshe's claims that are based on the First CyberTip, Defendants' disclosure of Image One (Counts II, IV, VI, and VIII), because a hash match to "apparent" CSAM constitutes "facts or circumstances from which there is an apparent violation" of CSAM laws, and Lawshe failed to allege facts permitting the reasonable inference that Defendants engaged in intentional misconduct or acted with actual malice in making the disclosure. The Motions are due to be denied as to Lawshe's claims that are based on the Second CyberTip, Defendants' disclosure of Image Two (Counts I, III, V, and VII), because a hash match to "unconfirmed" CSAM does not constitute such facts or circumstances, and in the alternative, Lawshe has plausibly alleged that Defendants acted with actual malice in making false statements in the Second CyberTip. Whether Defendants acted in a good-faith reliance on a statutory authorization is not apparent from the face of the Second Amended Complaint.

Accordingly, it is

**ORDERED:**

1.      Synchronoss's Motion to Dismiss (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART**.

     A.      Synchronoss's Motion is **GRANTED** to the extent that Counts IV and VIII of the Second Amended Complaint (Doc. 39) are **DISMISSED**.

     B.      In all other respects, Synchronoss's Motion is **DENIED**.

2.      Verizon's Motion to Dismiss (Doc. 27) is **GRANTED IN PART** and **DENIED IN PART**.

     A.      Verizon's Motion is **GRANTED** to the extent that Counts II and VI of the Second Amended Complaint are **DISMISSED**.

     B.      In all other respects, Verizon's Motion is **DENIED**.

3.      Defendants must answer the remaining claims in the Second Amended Complaint in accordance with Rule 12.

*(remainder of page intentionally left blank)*

4. The parties shall conduct a case management conference and file an amended case management report on the form required by this Court no later than **March 21, 2025**.

**DONE AND ORDERED** in Jacksonville, Florida this 28th day of February, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

lc33

Copies to:
Counsel of Record

- 29 -

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 250829-23625959

**CLOSED**

  Submitted

| **STATUS** | **PRODUCT** | **ISSUE** |
|---|---|---|
| Submitted to the CFPB on 8/29/2025 | Credit reporting or other personal consumer reports | Problem with a company's investigation into an existing issue |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

I am a licensed mortgage loan officer (NMLS #1894769), and I used Facebook (Meta Platforms, Inc.) as a primary tool to operate my mortgage business through a verified business page titled "Mina Awad NMLS 1894769." On or around [07/16/2025], Facebook disabled my personal and business accounts without prior warning and falsely accused me via email of violating their policies concerning child sexual exploitation — a completely false and defamatory allegation. I have never posted or shared anything that violates such policies. The account was used strictly for business and mortgage client interactions, including advertising my services as a licensed loan officer, engaging with clients, and maintaining a digital presence for regulatory and professional visibility. By shutting down my access and falsely accusing me of criminal activity, Meta has: Destroyed my business presence on their platform Interfered with my ability to operate as a licensed mortgage provider Damaged my reputation both personally and professionally

Caused serious emotional and economic harm Furthermore, Facebook provided no meaningful appeal process or evidence of any violation, nor did they allow me to defend myself or clear my name. I am requesting that the CFPB review whether Meta's actions have improperly interfered with my ability to engage in financial services, and whether their practices amount to unfair or abusive acts affecting a licensed mortgage provider operating under federal and state laws.

**ATTACHMENTS**

meta
accusation.pdf
(193.5 KB)

View full complaint ⊕

## ✓ Sent to company

**STATUS**

Sent to company on 9/4/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## ✓ Company responded

**STATUS**

Company responded on 9/19/2025

**RESPONSE TYPE**

Closed with explanation

### Company's Response

Dear MINA AWAD Thank you for contacting us regarding your account(s) being disabled. After further investigation, we have determined that you are ineligible to use Facebook. Unfortunately, for safety and security reasons, we cannot provide additional information as to why your account(s) were disabled. We appreciate your understanding, as this decision is final. We hope this clarifies the matter and thank you again for

taking the time to correspond with us. We now consider this matter to be
closed. Sincerely, Meta Platforms, Inc.
**ATTACHMENTS**

MINA

AWAD_T237055430_Closed
With Explanation.pdf (44.6
KB)



# Feedback
# requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 9/19/2025 | 11/18/2025 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days
from when the company responded to share your feedback. The CFPB will share your feedback
responses with the company and use the information to help CFPB's work with consumer
complaints.

# Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday

(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

 **Gmail**

mina rasm <minaawadny954@gmail.com>

## Request to Verify CyberTipline Report – Name: Mina Awad
2 messages

**mina rasm** <minaawadny954@gmail.com>
To: info@ncmec.org

Mon, Sep 1, 2025 at 10:21 AM

Dear NCMEC Team,

I hope this message finds you well.

My name is **Mina Awad**, and I am reaching out to respectfully request assistance in verifying whether a **CyberTipline report** has been filed under my personal information. On **July 16, 2025**, I was falsely accused by Meta Platforms (specifically, Facebook or Instagram) of violating child safety policies. As part of their stated procedure, they may submit such reports to your organization.

I am requesting this information to help clear my name, as I believe this was a **false or automated error** and no such content was ever shared or associated with my account.

Here are the relevant details for your search:

- **Full Name:** Mina Awad

- **Email Address:** minaawad954@gmail.com & msunshinemortgage@gmail.com

- **Home Address:** 439 N Laurel Dr, Margate, FL 33063

- **Accusation Date:** July 16, 2025

- **Associated Accounts:** Facebook / Instagram (same email as above)

I understand that NCMEC is bound by strict confidentiality and legal standards, but if you are able to confirm whether a report was filed under my information, it would help me **prove that the accusation is false** and work toward clearing my name.

Thank you very much for your time and attention. Please let me know if you need any further information to process this request.

Sincerely,
**Mina Awad**
minaawad954@gmail.com & msunshinemortgage@gmail.com

---

**HOTLINE@NCMEC.ORG** <HOTLINE@ncmec.org>
To: "minaawadny954@gmail.com" <minaawadny954@gmail.com>

Mon, Sep 1, 2025 at 10:39 AM

Thank you for your message. We can not confirm or deny any report because all reports are confidential, We are a centralized database and we send all reports to appropriate agencies and law enforcement. You can file a cybertip report; report.cybertip.org and note what happened. We will then send the report to the appropriate agency.

---

**From:** minaawadny954@gmail.com
**Sent:** Mon 09/01/2025, 10:22 am
**Subject:** Request to Verify CyberTipline Report – Name: Mina Awad

**External email warning** - This email originated from an external party (outside of NCMEC). Please do not click links or open attachments unless you were expecting this communication. If you believe this message is suspicious in nature, please use the "Phish Alert" button in the Outlook ribbon above.

 **Gmail**

mina rasm <minaawadny954@gmail.com>

---

## From the Florida Attorney General's Office
1 message

---

**attorney.general@myfloridalegal.com** <attorney.general@myfloridalegal.com>
To: MINAAWADNY954@gmail.com

Thu, Sep 4, 2025 at 9:00 AM

The Florida Attorney General's Office has received your correspondence that may relate to the Florida Digital Bill of Rights, §501.701-722, Florida Statutes. Thank you for taking the time to share this information with us. Our Office uses complaints such as yours to identify patterns of questionable business activities, which may indicate the need for formal investigation or action by our office to protect the state's public interest and stop violations of the law.

We understand that you are inquiring about access to a Meta account. Pursuant to Section 501.706, Meta has provided a self-service mechanism that must be exercised before we can take further action pursuant to the Florida Digital Bill of Rights. Please document yourself completing all relevant steps located in the attached guidance document.

Taking into account the information you provided, we have determined there is not a current enforcement issue to be addressed by our Office. However, if you follow the steps outlined in the guidance document and do not have success with your issue, please submit a new complaint at https://legacy.myfloridalegal. com/Contact.nsf/DBOR?OpenForm with documentation showing you took the outlined self-help steps, and we will reevaluate this decision.

You should also be aware of the platform's "Community Standards" and know that while a platform such as Meta is required to allow users to exercise their rights provided under the Florida Digital Bill of Rights, including the right to access their data, they are allowed to create restrictions on the use of your account. These restrictions cannot waive, or limit consumer rights given under the Florida Digital Bill of Rights but can change your ability to use the platform.

In addition to the above, you may file a complaint with the Internet Crime Complaint Center (IC3), a partnership between the Federal Bureau of Investigation (FBI) and the National White Collar Crime Center (NW3C). The IC3 reviews Internet related complaints and refers complaints to federal, state, local, or international law enforcement and regulatory agencies as appropriate. You may file a complaint with the IC3 at:
Internet Crime Complaint Center (IC3)
Website: http://www.ic3.gov

Please note that affected persons may have other legal rights. Some of these rights may have time limitations. The Florida Attorney General's Office cannot provide you with legal advice. You should talk to an attorney if you are seeking legal advice. The Florida Bar offers a Lawyer Referral Service by calling toll-free at (800) 342-8011 or online at https://www.floridabar.org/public/lrs/.

We hope this information proves helpful.

Sincerely,

Florida Digital Bill of Rights Team

Office of the Attorney General

Case 0:26-cv-60688-JMS Document 1-2 Filed 03/17/2026 Page 60 of 90

3507 E. Frontage Road, Suite 325

Tampa, FL 33607

Website: www.myfloridalegal.com

## Guidance Document: Tools Designed To Help Facebook and Instagram Users Regain Access to their Account

### For Facebook users:

**If the user has lost access to their Facebook account due to hacking or an attempted hack**, they should visit: Recover a hacked Facebook account. The user will then be instructed to follow Facebook's account recovery tool to change their password. If the user is no longer able to login to their account, then they should select the "My Account Is Compromised" button, which will prompt them to provide the mobile number or email address associated with their account. The user will then receive a verification code via email or text. If the user experiences issues receiving the verification code, they should try requesting the code from another device that they have previously used to access their Facebook account, such as their mobile phone. In some cases the user may be required to submit additional verification information, such as uploading a "video selfie" or providing a copy of their government-issued ID.

If the user's Facebook account was suspended or disabled after being compromised, the user should first take the steps above to regain access to their account. After that, the user should visit the "My personal Facebook account is suspended or disabled" page. In some cases, the user may be required to appeal the suspension as described below.

**If the user is unable to access their Facebook account due to a lost email address or mobile phone number**, they should visit: Recover your Facebook account if you can't access your account email address or mobile phone number. The user should attempt to recover their account by visiting https://www.facebook.com/hacked. If this approach proves unsuccessful, they should try logging in with an alternative email address or mobile phone number that might be linked to their Facebook account.

Should these efforts fail, the user can attempt to recover their account using a device that they have previously used to log into Facebook. On this device, the user should navigate to https://www.facebook.com/login/identify and enter any email address or mobile phone number that the user believes could be registered to the account. If this does not yield results, entering the user's account name or username might help, and they can also ask a friend to provide their account's username from their Facebook's profile URL if needed.

Upon locating their account, the user should select "No longer have access to these?" and follow the prompts to upload an ID to confirm their identity. Once their identity has been confirmed, they will be asked to reset their account password. After the user regains account access, they will then be able to update their account information in Facebook settings with a new email address or phone number.

**If the user's account has been suspended or disabled by Meta (or appears deactivated)**, the user should visit My personal Facebook account is suspended or disabled. If the user believes their account was wrongfully suspended, they generally have 180 days to appeal Meta's decision to suspend the account. Accounts suspended for suspicion of belonging to an underage user have 30 days to appeal the decision. To initiate an appeal, they should attempt to login to their account and will be prompted to start the appeal process. If an appeal is not made within the relevant period, or if the appeal is unsuccessful, the account will be permanently disabled. If after reviewing the suspension, Meta determines that the user's account was mistakenly suspended, it will notify the user that their account access has been restored.

If Meta disabled the user's account because the account was compromised (e.g., the bad actor violated Meta's Community Standards once they gained access to the account), then the user should follow the steps described above to regain access to their compromised account.

**If the user has forgotten their Facebook password**, the user should visit: <u>Change your Facebook password</u>. Next, they should select "Forgot password?" at the bottom of the login screen. The user will then be prompted to enter their email or mobile phone number associated with their account. If the information provided matches the user's account, they will receive a verification code to their email address or a code via text message. Once the user's identity has been verified, they will be prompted to create a new password.

### For Instagram users:

**If a user has lost access to their Instagram account due to hacking or an attempted hack,** they should visit: <u>Hacked Instagram Account</u> and follow the prompts to verify their identity. This may involve providing their email or phone number associated with their account or a selfie. If the user's account email or password have been changed, the user can request a login link from Instagram. To receive a link, the user should select the button "Forgot password?" on the login screen and enter their username, email address, or phone number associated with their Instagram account. Meta will then send a login link via email or text message. The user should then follow the on-screen instructions to regain access. If the user experiences any issue receiving the verification code, they should try requesting the code from another device that they have previously used to access their Instagram account, such as their mobile phone. In some cases the user may be required to submit additional verification information, such as uploading a "video selfie" or providing a copy of their government-issued ID.

If the user's Instagram account was suspended or disabled after being compromised they should first take the steps above to regain access to the account. After that, they should visit the "<u>Disabled Instagram account</u>" page to appeal the suspension as described below.

**If the user has lost access to the email or phone number linked to their Instagram account**, they should visit: <u>Lost access to email or phone number linked to Instagram account</u>. The user may attempt to regain access to their email account by reaching out to their email provider. Many email providers offer recovery options, such as password reset links or support requests. The user can also try to login to their account via an alternative method, either with their email, phone number (assuming they have not lost access to both email and phone), or by logging in with their Facebook account.

In the event that does not work, the user should visit https://www.instagram.com/hacked/ and select "the login code was sent to a mobile number or email that I don't have access to." To locate the account that needs to be recovered, the user will be prompted to provide their username, mobile number, or email address associated with their Instagram account. Once the account has been identified, they will be prompted to confirm their identity by uploading a "selfie video." This video will then be compared against the photos/videos that they have previously posted to their Instagram account by Meta's dedicated security team. Once their identity has been confirmed, they will be asked to reset their account password. After the user regains account access, they will then be able to update their account information in Instagram settings with a new email address or phone number.

**If the user's account has been suspended or disabled by Meta (or appears deactivated),** they should visit <u>Disabled Instagram account</u>. If the user believes their account was wrongfully suspended or disabled, they may appeal the decision generally within 180 days of the account deactivation. Accounts suspended for suspicion of belonging to an underage user have 30 days to appeal the decision. To initiate an appeal, the user should attempt to login to their account and there they will be prompted to start the appeal process. If an appeal is not made within the relevant period, or if the appeal is unsuccessful, the account will be permanently disabled. If after reviewing the suspension, Meta

determines that the account was mistakenly suspended, it will notify the user that their account access has been restored.

If Meta disabled the user's account because the account was compromised (e.g., the bad actor violated Meta's Community Standards once they gained access to the account), then they should follow the steps described above to regain access to their compromised account.

**If the user has forgotten their Instagram password**, they should visit: Recover your Instagram password. Next, the user should select "Forgot password?" at the bottom of the login screen. The user will then be prompted to enter their email, mobile phone number, or username associated with their Instagram account. If the information provided matches their account, they will receive a verification code to their email address or a code via text message. Once the user has verified their identity, they will be prompted to create a new password.

PLEASE DO NOT REPLY TO THIS E-MAIL. THIS ADDRESS IS FOR PROCESSING ONLY.

To contact this office please visit the Attorney General's website at www.myfloridalegal.com and complete the on-line contact form.

---

INTERNET MESSAGE RECEIVED BY THE ATTORNEY GENERAL'S OFFICE ON 08/29/2025

MINA AWAD
439 N LAUREL DR
Margate, FL 33063
Phone: (954) 446-4536
Email: minaawadny954@gmail.com

Subject: Meta Platforms, Inc (facebook)

RE: Meta Platforms, Inc (facebook)
1601 Willow Road
Menlo Park, CA 94025
Website: www.facebook.com

I am submitting this formal complaint against Meta Platforms, Inc. (Facebook) for falsely accusing me of child sexual exploitation, permanently disabling my personal and business accounts without due process, and causing serious reputational and emotional harm.

On or around [07/16/2025], I received a notification from Facebook stating that my account had been permanently disabled due to alleged "child sexual exploitation" — a criminal-level accusation that is completely false, baseless, and defamatory. I have never posted or shared anything even remotely related to such content.

My account was tied to my licensed business page — "Mina Awad NMLS 1894769" — where I provide mortgage services in Florida. The disabling of this account has disrupted my professional activities, harmed my reputation in the community, and inflicted emotional stress on me and my family.

Furthermore:

Facebook provided no meaningful appeal process or evidence.

Their email notification was seen by my spouse, creating serious emotional distress and tension.

Their systems appear to use automated moderation without human oversight, issuing criminal-level accusations that can damage a person's reputation and livelihood without justification.

Case 0:26-cv-60688-JMS Document 1-2 Entered on FLSD Docket 03/0/2026 Page 63 of 90

I believe Meta's actions constitute unfair and deceptive practices under
Florida consumer protection law and may violate my rights as a consumer and
licensed professional in this state.

I respectfully request the Florida Attorney General's Office to:

1. Investigate this matter and Meta's handling of false accusations.

2. Hold Meta accountable for the reputational harm caused by their automated
enforcement.

3. Pressure Meta to implement fairer procedures and provide clear appeal
channels for Florida residents.

I am also submitting complaints to the Federal Trade Commission and may seek
legal counsel regarding defamation and professional harm.

Thank you for your attention to this serious matter.

Sincerely,
Mina Awad
(954) 446-4536

\*\*\*\* FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM \*\*\*\*

2/16/26, 12:26 PM Case 0:26-cv-60688-JMS Gmail - Response: Your Civil Rights Division Report - 659059-ZBX from the Administrative Section Page 64 of 90

 **Gmail**

mina rasm <minaawadny954@gmail.com>

---

## Response: Your Civil Rights Division Report - 659059-ZBX from the Administrative Section
2 messages

---

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>
Reply-To: civilrightsdonotreply@mail.civilrights.usdoj.gov
To: minaawadny954@gmail.com

Wed, Sep 3, 2025 at 10:25 AM



U.S. Department of Justice
**Civil Rights Division**

civilrights.justice.gov

Dear mina awad,

You contacted the Department of Justice on September 1, 2025. After careful review of what you submitted, we have decided not to take any further action on your complaint.

# What we did:

Team members from the Civil Rights Division reviewed the information you submitted. Based on this information, our team determined that the situation you described does not appear to be within the jurisdiction of the federal civil rights laws we enforce. For that reason and in the exercise of our enforcement discretion, the Division will take no further action regarding your correspondence. Even when the Division has jurisdiction over a particular matter, it is within the Division's discretion to determine whether to pursue a particular matter for various reasons including the availability of evidence, among other considerations.

Your report number is 659059-ZBX.

# What you can do:

Your issue may be covered by other federal, state, or local laws that we do not have the authority to enforce. We are not determining that your report lacks merit.

Your state bar association or local legal aid office may be able to help with your issue even though the Department of Justice cannot.

# To find a local office:

Legal Services Corporation (or Legal Aid Offices)

https://www.lsc.gov/find-legal-aid

Thank you for taking the time to contact the Department of Justice about your concerns. We regret that we are not able to provide more help on this matter.

Sincerely,

U.S. Department of Justice
Civil Rights Division

## Contact

civilrights.justice.gov

mail    U.S. Department of Justice
        Civil Rights Division
        950 Pennsylvania
        Avenue, NW
        Washington, D.C. 20530-0001

phone   (202) 514-3847
        1-855-856-1247 (toll-free)
        Telephone Device for the Deaf
        (TTY) (202) 514-0716

---

**mina rasm** <minaawadny954@gmail.com>
To: civilrightsdonotreply@mail.civilrights.usdoj.gov

Wed, Sep 3, 2025 at 3:55 PM

☑ 1. False Accusation of a Serious Criminal Offense

Meta accused you of violating child sexual exploitation policies — a severe criminal allegation under both U.S. and international law.

Impact: Even without legal charges, this stigmatizes you and can have lifelong personal, professional, and psychological consequences.

The DOJ has a duty to protect individuals from unjust reputational harm when powerful platforms act as accuser, judge, and executioner without oversight.

---

☑ 2. Lack of Due Process Violates Fundamental Rights

Meta:

Did not present any evidence of wrongdoing.

Gave you no opportunity to respond to the accusation.

Provided no appeal or contact method to clear your name.

Case 0:26-cv-60688-JMS Document 1-2 Entered on FLSD Docket 03/10/2026 Page 66 of 90

This violates principles of due process, a core concept in U.S. civil rights law—even if the actor is private:

When private companies function as public utilities or quasi-governmental entities (as courts have increasingly recognized platforms do), they must be subject to due process norms.

---

☑ 3. Unchecked Corporate Power & No Accountability

Meta controls:

Billions of accounts.

Communication, business pages, social proof, access to commerce.

Yet, it:

Uses automated moderation systems to make criminal-level accusations.

Disables accounts permanently without human review.

Offers no appeals, even for life-altering claims.

DOJ is tasked with protecting citizens from unregulated, harmful conduct by dominant corporations, especially when that conduct:

Involves false criminal accusations.

Removes individuals from the digital public square.

---

☑ 4. Civil Rights Implications of Algorithmic Enforcement

Meta's systems likely relied on AI or automated content moderation to flag your account.

These systems are known to have high error rates, especially with context-based violations like "suggestive" content or misclassified images/messages.

This creates a pattern of arbitrary enforcement and disproportionate punishment.

The DOJ has previously expressed interest in algorithmic bias, unfair digital enforcement, and civil liberties violations in the tech sector. This falls squarely within that domain.

---

☑ 5. Platform Functions as a Digital Public Square

According to legal scholars and even Supreme Court opinions (e.g., Packingham v. North Carolina), platforms like Meta now serve as:

Critical spaces for public discourse, business, expression, and connection.

Being banned—especially under false allegations of criminal behavior—is equivalent to being exiled from public life.

The DOJ has a role in ensuring:

Citizens are not unfairly silenced, defamed, or excluded from essential digital spaces by opaque, unaccountable actors.

---

☑ 6. Pattern of Harm & Systemic Risk

You're not alone—Meta's flawed enforcement system has:

Wrongfully banned journalists, activists, business owners, and everyday users.

Generated thousands of complaints involving permanent bans without explanation or appeal.

If Meta can falsely accuse people of crimes without evidence or redress:

No one is safe from reputational destruction or digital exclusion.

The DOJ must intervene to prevent systemic abuse of automated enforcement systems.

---

☑ 7. Lack of Regulatory Oversight of Big Tech Harms Americans

Your case shows how Big Tech's unregulated power can be used to:

Accuse without proof

Silence without hearing

Punish without remedy

The DOJ's Civil Rights Division exists to:

Protect Americans from precisely this kind of institutional overreach, even when the actor is a private, powerful corporation.

Investigate whether tech companies' actions have a discriminatory or unlawful impact.

---

☑ 8. Moral and Public Interest Imperative

When the accused has no way to defend themselves, and the accuser is a global tech monopoly, the burden falls on the DOJ to:

Intervene in the interest of justice.

Prevent false accusations related to the most heinous crimes from becoming permanent digital records without recourse.

If the DOJ does not act in cases like this, who will protect the falsely accused from defamation and digital erasure by platforms with no accountability?

On Wed, Sep 3, 2025, 10:25 AM DOJ Civil Rights - Do Not Reply <civilrightsdonotreply@mail.civilrights.usdoj.gov> wrote:



U.S. Department of Justice
**Civil Rights Division**      | civilrights.justice.gov

Dear mina awad,

You contacted the Department of Justice on September 1, 2025. After careful review of what you submitted, we have decided not to take any further action on your complaint.

# What we did:

Team members from the Civil Rights Division reviewed the information you submitted. Based on this information, our team determined that the situation you described does not appear to be within the jurisdiction of the federal civil rights laws we enforce. For that reason and in the exercise of our enforcement discretion, the Division will take no further action regarding your correspondence. Even when the Division has jurisdiction over a particular matter, it is within the Division's discretion to determine whether to pursue a particular matter for various reasons including the availability of evidence, among other considerations.

Your report number is 659059-ZBX.

# What you can do:

Your issue may be covered by other federal, state, or local laws that we do not have the authority to enforce. We are not determining that your report lacks merit.

Your state bar association or local legal aid office may be able to help with your issue even though the Department of Justice cannot.

# To find a local office:

Legal Services Corporation (or Legal Aid Offices)
https://www.lsc.gov/find-legal-aid

Thank you for taking the time to contact the Department of Justice about your concerns. We regret that we are not able to provide more help on this matter.

Sincerely,

U.S. Department of Justice
Civil Rights Division

2/16/26, 10:25 PM
Case 0:26-cv-60688-JMS Document 1-2 Entered on FLSD Docket 2/17/2026 Page 69 of 90
\*\*\*\* FILED BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM \*\*\*\*
Gmail Response: Your Civil Rights Division Report - 659059-ZBX from the Administrative Section

## Contact

**civilrights.justice.gov**



mail

U.S. Department of
Justice
Civil Rights Division
950 Pennsylvania
Avenue, NW
Washington, D.C. 20530-
0001

phone

(202) 514-3847
1-855-856-1247 (toll-free)
Telephone Device for the
Deaf
(TTY) (202) 514-0716

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY



AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION ®

This is not an Invoice



# *Financial History*

| History of transactions thru 13-Feb-2026 | CASE# 012500055850 | BALANCE $0.00 |
|---|---|---|
| **Name** Mina Awad 439 North Laurel Drive Margate Florida 33063 | Mina Awad Re: Mina Awad v. Meta Platforms, Inc. | |

## Administrative Fees

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 14650350 | 10 Feb 2026 | Fee for Increased Claim | $7,475.00 |
| 14624768 | 12 Jan 2026 | Initial Administrative Fee | $1,450.00 |
| 14650350 | 11 Feb 2026 | Cancellation: Fee for Increased Claim | -$7,475.00 |
| | | **Subtotal - Administrative Fees** | $1,450.00 |

## Neutral Compensations and Expenses

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 14637417 | 26 Jan 2026 | Arbitrator's Compensation | $1,000.00 |
| | | **Subtotal - Neutral Compensations and Expenses** | $1,000.00 |
| | | **Net Total of All Charges** | $2,450.00 |

## Payments

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 182753 | 2 Feb 2026 | Received From :mina awad | $1,000.00 |
| 154530 | 11 Nov 2025 | Received From :mina awad | $225.00 |
| 172658 | 10 Jan 2026 | Received From :MINA AWAD | $1,225.00 |
| | | **Subtotal - Payments** | $2,450.00 |

## Refunds

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| | | **Subtotal - Refunds** | |
| | | **Net Total of All Charges** | $2,450.00 |
| | | **CASE BALANCE** | $0.00 |

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

 **Gmail**

**mina rasm <minaawadny954@gmail.com>**

---

## Mina Awad v. Meta Platforms, Inc. - Case 01-25-0005-5850

**mina rasm** <minaawadny954@gmail.com>
To: RedrupT@adr.org

Sat, Jan 10, 2026 at 4:15 PM

Dear Ms. Redrup,

Thank you for your letter dated January 7, 2026.

This matter is a consumer dispute between an individual user and Meta Platforms, Inc., arising out of Meta's Terms of Service. The applicable arbitration agreement is contained within Meta's Terms of Service, which provides for arbitration administered by the American Arbitration Association under its Consumer Arbitration Rules.

Enclosed for your review are copies of the relevant arbitration provision and the arbitration agreement as set forth in Meta Platforms, Inc.'s Terms of Service. No separate submission agreement signed by both parties is required, as Meta's Terms constitute a valid and binding arbitration agreement.

As this is a consumer arbitration, I respectfully request confirmation of the applicable consumer filing fee and reallocation of the business portion of the administrative fees to Meta Platforms, Inc., in accordance with the AAA Consumer Arbitration Rules.

Please note that the required consumer filing fee has been paid. Proof of payment and the receipt are attached for your records.

Kindly advise if any additional information or documentation is required to cure any remaining filing deficiency.

Sincerely,
Mina Awad

---

**4 attachments**

 **Meta_Terms_of_Service_Arbitration_Provision (1).pdf**
3K

**payment.pdf**
115K

 **2026-01-07 INTAKE Pre-Case Letter.pdf**
138K

**Arbitration_Statement_Mina_Awad_v_Meta (1) (1) (1).pdf**
305K

 **Gmail**

mina rasm <minaawadny954@gmail.com>

## Mina Awad v. Meta Platforms, Inc. - Case 01-25-0005-5850

**mina rasm** <minaawadny954@gmail.com>
To: RedrupT@adr.org
Cc: Legal@meta.com

Wed, Jan 7, 2026 at 2:53 PM

Dear Ms. Redrup,

Thank you for your letter dated January 7, 2026.

This matter is a consumer dispute between an individual user and Meta Platforms, Inc., arising out of Meta's Terms of Service. The applicable arbitration agreement is contained within Meta's Terms of Service, which provides for arbitration administered by the American Arbitration Association under its Consumer Arbitration Rules.

I am enclosing the relevant arbitration provision from Meta Platforms, Inc.'s Terms of Service for your review. No separate submission agreement signed by both parties is required, as Meta's Terms constitute a binding arbitration agreement.

As this is a consumer arbitration, I respectfully request confirmation of the applicable consumer filing fee and reallocation of the business portion of the administrative fees to Meta Platforms, Inc., in accordance with AAA Consumer Arbitration Rules.

Please advise if any additional information is required to cure the filing deficiency.

Sincerely,

Mina Awad

[Quoted text hidden]

📄 **Meta_Terms_of_Service_Arbitration_Provision.pdf**
3K

**** FILED: BROWARD COUNTY, FL, Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM ****
Case 0:26-cv-60683-RAR Document 1 Entered on FLSD Docket 02/18/2026 Page 73 of 90

 **Gmail**

mina rasm <minaawadny954@gmail.com>

---

## URGENT: PAYMENT UNDER DURESS / AAA VIOLATION OF CONSUMER PROTOCOL – Case #[Mina Awad v. Meta Platforms, Inc. - 01-25-0005-5850

mina rasm <minaawadny954@gmail.com>
To: Taylor-Rae Redrup <RedrupT@adr.org>, PaigeChevez@adr.org

Tue, Jan 27, 2026 at 5:32 AM

Dear Ms. Redrup and AAA Case Management,

I am in receipt of your demand for an additional $1,000. **I am formally objecting to this payment and demanding an immediate Administrative Review by a Supervisor or Vice President of Case Management before the close of business tomorrow, January 28, 2026.**

I am bringing to your attention a repeating pattern of administrative coercion in this file that must be corrected immediately:

1. **Ignored Evidence:** On **January 7, 2026**, I sent a formal email providing Meta's Terms of Service and proof that this is a **Consumer Case**. That evidence was ignored, and no explanation was provided.
2. **Payment Under Duress:** Because my evidence was ignored, I was forced to pay **$1,450** (over 6x the consumer cap) simply because I was told the AAA would not move forward with my case otherwise.
3. **The "Gatekeeper" Violation:** Meta suspended my **personal profile.** This is a consumer service. By disabling it, they "decapitated" my business page and cut off my livelihood. This dispute arises from a consumer contract and must be treated as such.
4. **Repeated Coercion:** You are now repeating this tactic by demanding another $1,000 while ignoring **Section 4 of Meta's Terms,** which explicitly requires **AAA Consumer Rules** for individual users.

**I am requesting a response within 24 hours confirming:**

- That this case has been reclassified as **Consumer.**
- That my total fee responsibility is capped at the **$225 consumer rate.**
- That my previous overpayment of $1,225 will be credited or refunded.

I am eager to restore my business and my account, but I will not be bullied into paying "Commercial" rates that violate the law, Meta's own contract, and the **AAA Consumer Due Process Protocol.**

Sincerely,

Mina Awad

 Gmail                                              mina rasm <minaawadny954@gmail.com>

---

## Mina Awad v. Meta Platforms, Inc. - Case 01-25-0005-5850

---

**mina rasm** <minaawadny954@gmail.com>                                    Tue, Jan 27, 2026 at 2:38 PM
To: AAA Paige Chevez <PaigeChevez@adr.org>
Cc: Legal@meta.com

**AAA Case Management,**

I am in receipt of your demand for an additional $1,000. **I
am formally objecting to this payment and demanding
an immediate Administrative Review by a Supervisor
or Vice President of Case Management before the
close of business tomorrow, January 28, 2026.**

I am bringing to your attention a repeating pattern of
administrative coercion in this file that must be corrected
immediately:

1. **Ignored Evidence:** On **January 7, 2026,** I sent a
   formal email providing Meta's Terms of Service and
   proof that this is a **Consumer Case.** That evidence
   was ignored, and no explanation was provided.
2. **Payment Under Duress:** Because my evidence
   was ignored, I was forced to pay **$1,450** (over 6x
   the consumer cap) simply because I was told the
   AAA would not move forward with my case
   otherwise.
3. **The "Gatekeeper" Violation:** Meta suspended
   my **personal profile.** This is a consumer service.
   By disabling it, they "decapitated" my business
   page and cut off my livelihood. This dispute arises
   from a consumer contract and must be treated as
   such.
4. **Repeated Coercion:** You are now repeating this
   tactic by demanding another $1,000 while
   ignoring **Section 4 of Meta's Terms,** which
   explicitly requires **AAA Consumer Rules** for
   individual users.

**I am requesting a response within 24 hours
confirming:**

- That this case has been reclassified as **Consumer.**
- That my total fee responsibility is capped at
  the **$225 consumer rate.**
- That my previous overpayment of $1,225 will be
  credited or refunded.

I am eager to restore my business and my account, but I
will not be bullied into paying "Commercial" rates that
violate the law, Meta's own contract, and the **AAA
Consumer Due Process Protocol.**

Sincerely,

Mina Awad

[Quoted text hidden]

**2 attachments**



**image444638.png**
6K

**image959336.png**
11K



  mina rasm <minaawadny954@gmail.com>

## Mina Awad v. Meta Platforms, Inc. - Case 01-25-0005-5850

**AAA Paige Chevez** <PaigeChevez@adr.org>    Tue, Jan 27, 2026 at 1:04 PM
To: mina rasm <minaawadny954@gmail.com>, AAA Paige Chevez <PaigeChevez@adr.org>, "Legal@meta.com" <Legal@meta.com>

Dear Parties,

This will acknowledge receipt of the below email and confirms it has been uploaded to the casefile.

At this time, AAA is asking Respondent to please provide comments on the below by **January 29, 2026**.

**Thank you,**

**Paige Chevez**




**AAA Paige Chevez**
Case Administrator II

American Arbitration Association
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
**T:** 401 267 4974 **E:** PaigeChevez@adr.org
adr.org | icdr.org | aaaicdrfoundation.org
**Learn about the AI arbitrator**

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** mina rasm <minaawadny954@gmail.com>
**Sent:** Tuesday, January 27, 2026 4:33 AM
**To:** AAA Paige Chevez <PaigeChevez@adr.org>
**Cc:** Legal@meta.com
**Subject:** Re: Mina Awad v. Meta Platforms, Inc. - Case 01-25-0005-5850

*** External E-Mail – Use Caution ***

[Quoted text hidden]

 **Gmail**

mina rasm <minaawadny954@gmail.com>

---

## URGENT: Consumer Case Misclassification & Billing Violation – Case #01-25-0005-5850 – Ticket #500034832

**mina rasm** <minaawadny954@gmail.com>                                    Thu, Jan 29, 2026 at 10:35 AM
To: AAA Paige Chevez <PaigeChevez@adr.org>
Cc: ElizabethCorsetti@adr.org, aaamiami@adr.org, customerrelations@adr.org, casefiling@adr.org

Attn: Paige Chevez and Elizabeth Corsetti,
I am formally documenting that the AAA has improperly classified Case #01-25-0005-5850 as Commercial despite clear evidence that this is a Consumer matter under Meta's Terms of Service (Section 4.2) and AAA Rule R-2. This administration is currently in violation of the AAA Consumer Due Process Protocol.
I have made multiple phone calls today (January 29, 2026) to both the Northeast Case Management Center (Paige Chevez and Elizabeth Corsetti) and the Miami Regional Office. I have left detailed messages for both Paige Chevez and Elizabeth Corsetti, as I was informed by Miami staff that I cannot reach a supervisor directly and must communicate solely via email.
My formal objections to the letter dated January 26, 2026, are as follows:
Improper Billing: AAA has billed me $1,000 for arbitrator compensation. Under Consumer Rules, this is a business-side expense.
Withheld Funds: AAA continues to withhold $1,225 from my January 12th overpayment ($1,450 paid vs. $225 Consumer fee).
Coercive Barrier: The demand for commercial fees creates a "pay-to-play" barrier inconsistent with Principle 6 of the Consumer Due Process Protocol.
While I remain willing to pay the appropriate fees to proceed, I formally state that any further payments are being made under protest and financial duress to avoid the administrative closure of my case. This does not waive my right to file complaints regarding the misclassification, billing errors, or obstruction of process.
I demand the following by the end of business today:
Immediate correction to Consumer classification.
Issuance of a refund/credit for $1,225.
Withdrawal of the $1,000 arbitrator fee.
An extension of the February 2, 2026, selection deadline until a Consumer-qualified arbitrator list is provided.
Failure to respond by the end of business today will leave me no choice but to escalate this matter to the Florida Attorney General's Consumer Protection Division and the CFPB.
Sincerely,
Mina Awad
954-446-4536
Ticket #500034832

**** FILED: BROWARD COUNTY, FL - Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM ****
Case 0:26-cv-60688-JB    Document 1-6    Entered on FLSD Docket 04/02/2026    Page 78 of 90

 **Gmail**

<div align="right">mina rasm &lt;minaawadny954@gmail.com&gt;</div>

## OFFICIAL STAFF COMPLAINT & NOTICE OF REGULATORY FILING - Case #01-25-0005-5850

**mina rasm** &lt;minaawadny954@gmail.com&gt;                                    Fri, Jan 30, 2026 at 1:27 PM
To: AAA Paige Chevez &lt;PaigeChevez@adr.org&gt;, ElizabethCorsetti@adr.org
Cc: execoffice@adr.or, compliance@adr.org, board@adr.org, legal@adr.org

#### Attn: Elizabeth Corsetti (Assistant Vice President) CC: AAA Management and Compliance

This email serves as formal notice that I have filed consumer complaints with the **U.S. Consumer Financial Protection Bureau (CFPB)** and the **Florida Attorney General** regarding the American Arbitration Association's handling of Case #01-25-0005-5850. Confirmation receipts are attached.

I am an individual consumer in a dispute with Meta Platforms, Inc. Meta's Terms of Service expressly require arbitration under the AAA Consumer Arbitration Rules, which cap the consumer filing fee at $225. Despite this governing agreement, my case has been improperly treated as a "Commercial" matter.

## Administrative and Procedural Concerns

This email constitutes a formal administrative complaint regarding the professional conduct of Case Manager Paige Chavez and the staff at the Miami office. The following reflects a documented pattern of obstruction:

- **Jan 07 & 10:** Evidence of Meta's Consumer Terms sent; ignored.

- **Jan 27:** Call to Ms. Chavez; no return call.

- **Jan 28:** Ms. Chavez promised Meta's comments by Jan 29; failed to provide.

- **Jan 30 (Today):** I called Ms. Chavez and remained on the line for 5 minutes with no answer.

- **Jan 30 (Miami Office Obstruction):** I contacted the Miami office to speak with a supervisor. The representative stated I was **forbidden** from speaking with a supervisor. She refused to provide a direct number for the Case Manager and stated the only "allowable" communication was an email she would "forward" to a supervisor.

**Bad Faith and Bias:** I believe the AAA is intentionally blocking my access to management to protect Meta Platforms, Inc. as a high-volume corporate customer. By denying me a phone number for the administrator and refusing supervisor access, you are acting as a barrier to justice rather than a neutral forum. This is a clear violation of the **AAA Consumer Due Process Protocol.**

## Notice Regarding Fees and Deadlines

**DO NOT CLOSE Case #01-25-0005-5850.** Any closure for non-payment of "Commercial" fees while you are actively blocking my grievance process constitutes bad faith and a breach of contract.

If I am forced to make any payment to meet the February 2nd deadline, it is made **under formal protest, financial duress, and administrative force.** I do not waive any rights and will pursue the AAA in court to recover these extorted fees and for violations of the Florida Deceptive and Unfair Trade Practices Act.

## Requested Immediate Action

1. Immediate supervisory review of **Ticket #500034832.**

2. A **stay of all deadlines** pending the Florida AG and CFPB investigations.

3. Written disclosure of Meta's position regarding my consumer status.

4. Reclassification of this matter under **AAA Consumer Arbitration Rules.**

I expect a written response from a supervisor by Monday morning.

Sincerely,

**Mina Awad** Margate, Florida

---

**3 attachments**

 **state AG coplaint filed.pdf**
338K

**CFPB copmlaint.pdf**
656K

**Meta_Terms_of_Service_Arbitration_Provision (1) (2).pdf**
3K

 **Gmail**

mina rasm <minaawadny954@gmail.com>

---

## FORMAL OBJECTION and Notice of Administrative Conduct Concerns – Case #01-25-0005-5850

---

**mina rasm** <minaawadny954@gmail.com>                                    Fri, Jan 30, 2026 at 8:25 PM
To: AAA Paige Chevez <PaigeChevez@adr.org>, ElizabethCorsetti@adr.org
Cc: arc@adr.org, KurdzielM@adr.org, NewhallC@adr.org, CustomerService@adr.org


Attn: Elizabeth Corsetti and Paige Chevez,

I am writing to formally object to the request in your January 30, 2026 correspondence asking me to provide a "better email address" for Meta Platforms, Inc.

I must state clearly that I do not understand the basis for this request. Meta is one of the largest technology companies in the world and is registered with the AAA Consumer Clause Registry. AAA already possesses verified contact information for Respondent. Requesting that an individual consumer locate alternative contact information raises serious concerns regarding administrative handling and neutrality.

Furthermore, your own correspondence dated January 30 confirms that you will notify Respondent via First Class Mail; therefore, conditioning participation based on my delivery of an email address is an unnecessary and artificial barrier to my access to justice.

Additionally, I am documenting ongoing communication concerns. Your office routinely includes phone numbers in correspondence stating that I may call if I have questions. However, I have made multiple attempts to call and have not received return calls in response to those messages. I have called on multiple occasions and received either no response or no follow-up.

The only time I received a return call was during discussions related to payment of fees. Since asserting that this matter is a consumer dispute and that I should not be responsible for commercial-level fees, my calls have not been returned. This pattern raises serious concerns and is being formally documented.

I will not be providing any additional email address for Meta. Administrative service and respondent contact management are the responsibility of the administering organization, not the consumer claimant.

I have already provided the governing contract, including Section 4.2, which mandates administration under the Consumer Arbitration Rules. AAA has an independent obligation to apply the correct rules.

My complaints with the Florida Attorney General and the Consumer Financial Protection Bureau (CFPB) include concerns regarding administrative conduct and handling of this case, including this request and communication issues. I am also submitting a formal complaint regarding case handling and communication failures.

I request immediate reclassification under the Consumer Arbitration Rules and prompt resolution of my $1,225 overpayment.

Sincerely,
Mina Awad
954-446-4536

---

**2 attachments**

📄 **2026-01-30 AAA Requesting Comments.pdf**
134K

📄 **2025-01-29 Claimant Grievance Regarding Rules.pdf**
81K



AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

Northeast Case Management Center
Elizabeth Corsetti, JD
Assistant Vice President
1301 Atwood Avenue
Johnston, RI 02919
Telephone: (866)293-4053
Fax: (866)644-0234

January 30, 2026

Mina Awad
439 North Laurel Drive
Margate, FL 33063
Via Email to: Minaawadny954@gmail.com

Meta Platforms, Inc.
1601 Willow Road
Menlo Park, CA 94025
Via First Class Mail & Email to: Legal@meta.com

Case Number: 01-25-0005-5850

Mina Awad
-vs-
Meta Platforms, Inc.

Dear Parties:

This will confirm receipt of the enclosed and attached from Mr. Adwad. Respondents, should you have any comment, please submit to the undersigned, copying Mr. Adwad by **February 9, 2026.**

Please note, the AAA has received notice that the correspondence sent to Respondent at the email address provided on the demand was undeliverable.

At this time, we ask Claimant to provide a better email address for Respondents on or before **February 9, 2026**.

If no other email address is available, we will continue to notify the Respondents via First Class Mail only.

As a reminder, please note that as required by the AAA Standards of Conduct, all communications to the AAA shall be sent to your AAA case manager only, with a copy to the opposing party where appropriate. As such, please direct your emails to the AAA to the undersigned, Paige Chevez, as I am the case manager.

Thank you,
/s/
Paige Chevez
Case Administrator
Direct Dial: (401)267-4974
Email: PaigeChevez@adr.org

Enclosure

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM **** Case 0: 26-cv-60688 Document 1 Entered on FLSD Docket 2 Case #CACE-26-003-5851 Page 82 of 90

 **Gmail**

mina rasm <minaawadny954@gmail.com>

# AMENDED STATEMENT OF CLAIM AND RESPONSE TO AAA NOTICE - Case #01-25-0005-5850

**mina rasm** <minaawadny954@gmail.com>
To: AAA Paige Chevez <PaigeChevez@adr.org>
Cc: ip@fb.com

Sat, Jan 31, 2026 at 10:28 PM

Dear Ms. Chevez,
Please let this correspondence serve as my formal Amended Statement of Claim and my official response to the AAA notice dated January 30, 2026.
1. Amended Demand for Damages ($220,000.00)
I am amending my demand for compensatory damages to $220,000.00, based on a cause of action for Defamation Per Se. On July 16, 2025, Meta Platforms, Inc. issued a written notification characterizing my activity as "child sexual exploitation." This statement is false and constitutes an accusation of an infamous criminal offense, which under Florida law gives rise to presumed damages. The accusation caused severe reputational and professional harm, particularly within the trust-based mortgage industry in which I work.
2. Reservation of Rights (Punitive Damages)
Pursuant to Florida Statute § 768.72, I expressly reserve the right to further amend this claim to seek punitive damages should discovery and further proceedings support such relief. This reservation is based on Meta's reckless reliance on automated enforcement and a 7-month failure to provide a meaningful human review despite notice.
3. Consumer Classification and Administrative Fee Correction
This matter remains a Consumer Arbitration under AAA Rule R-1(a), as it arises from a standardized social media user agreement. The amended demand amount does not alter the nature of the arbitration agreement or its classification. I am still awaiting confirmation and correction regarding the $1,225 administrative overcharge. My prior payment was made under protest and solely to avoid delay; I respectfully request confirmation that this matter is properly classified as a consumer arbitration and that the administrative record is updated accordingly.
4. Response to "Undeliverable" Email Notice
Regarding the notice that correspondence to the Respondent was undeliverable, I have provided the official legal contact information for Meta Platforms, Inc. as listed in its Terms of Service (Legal@meta.com). If electronic delivery continues to be unsuccessful, I respectfully request that the AAA proceed with notification via First Class Mail, as referenced in your letter, to ensure the claim proceeds without unnecessary delay.
I have attached the July 16, 2025 notification from Meta as supporting documentation. Please confirm receipt of this amendment and update the case record accordingly.
Thank you for your attention to this matter.
Sincerely,
Mina Awad
(954) 446-4536

*\*\*\* FILED: BROWARD COUNTY, FL, Brenda D. Forman, CLERK 2/17/2026 10:42:00 AM \*\*\*\**

*Case 0-2\*\*\* FILED: BROWARD COUNTY, FL, Brenda D. Forman, CLERK 2/17/2026 10:42:00 AM \*\*\*\* 90-83 of 90*

 Gmail

mina rasm <minaawadny954@gmail.com>

## SUPPLEMENTAL FILING: Professional Credentials & Arbitrator Selection - Case #01-25-0005-5850

2 messages

**mina rasm** <minaawadny954@gmail.com>                                    Wed, Feb 4, 2026 at 5:14 PM
To: AAA Paige Chevez <PaigeChevez@adr.org>, ElizabethCorsetti@adr.org

Please accept this supplemental information to be included with my Second Amended Statement of Claim. I am copying Assistant Vice President Elizabeth Corsetti to ensure the administrative record reflects my formal objections and professional standing.

**1. Professional Credentials & Licensing Impact** The false accusation of "child sexual exploitation" issued by Meta on July 16, 2025, poses a direct threat to my professional licenses and my ability to earn a living in highly regulated industries. I am a dual-licensed professional in the State of Florida:

- **Florida Real Estate Broker License:** #3269643

- **NMLS (Mortgage) License:** #1894769

Under Florida law and federal NMLS standards, "moral turpitude" or criminal characterizations of this nature can lead to the immediate revocation of these licenses. Meta's refusal to provide a human review for over seven months is a reckless act of defamation that targets my professional existence.

**2. Arbitrator Selection** I have submitted my **List for Selection of Arbitrator**. My first choice is **Charles B. Jimerson, Esq.** I have selected Mr. Jimerson specifically because of his expertise in **Defamation** and his deep experience with the **Banking and Mortgage industry.** I expect the AAA to honor this selection and move to the appointment phase immediately.

**3. Formal Objection to Fee Classification** While I have paid a total of **$2,450.00** to prevent the arbitrary closure of my case, I reiterate my **formal refusal** of the "Commercial" classification.

- This is a **Consumer Dispute** under AAA Rule R-1(a).

- I have paid these excessive fees under **administrative duress** and solely to preserve my right to a hearing.

- I am demanding a refund of the **$2,225.00 overage** once the arbitrator is seated.

Please confirm that these license numbers and my arbitrator preferences are now part of the official case record.

Sincerely,

**Mina Awad** 954-446-4536

📄 **arbitration list.pdf**
   853K

**AAA Paige Chevez** <PaigeChevez@adr.org>                                    Fri, Feb 6, 2026 at 11:43 AM
To: mina rasm <minaawadny954@gmail.com>, AAA Paige Chevez <PaigeChevez@adr.org>

Dear Parties,

This acknowledges receipt of all correspondence submitted and confirms the AAA is currently reviewing them.

Additionally, we confirm the arbitrator compensation has been received.

**Thank you,**

**Paige Chevez**




**AAA Paige Chevez**
Case Administrator II

American Arbitration Association
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 267 4974 E: PaigeChevez@adr.org
adr.org | icdr.org | aaaicdrfoundation.org
**Explore 100 Years of AAA**

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** mina rasm <minaawadny954@gmail.com>
**Sent:** Wednesday, February 4, 2026 5:15 PM
**To:** AAA Paige Chevez <PaigeChevez@adr.org>; AAA Elizabeth Corsetti, JD <elizabethhickey@adr.org>
**Subject:** SUPPLEMENTAL FILING: Professional Credentials & Arbitrator Selection - Case #01-25-0005-5850

**\*\*\* External E-Mail – Use Caution \*\*\***

[Quoted text hidden]

\*\*\*\* FILED: BROWARD COUNTY, FL, Brenda D. Forman, CLERK 2/17/2026 10:49:00 AM \*\*\*\*
Case No: CACE-26-cv-000085/SMIT FL-OCV11 Missed Deadline Consumer Status Determination /1 Case #2625-Page 85 of 90

 **Gmail**

mina rasm <minaawadny954@gmail.com>

## URGENT FOLLOW-UP: Missed Deadline for Consumer Status Determination – Case #01-25-0005-5850 and amendment

2 messages

---

**mina rasm** <minaawadny954@gmail.com>
To: AAA Paige Chevez <PaigeChevez@adr.org>

Tue, Feb 10, 2026 at 2:53 PM

Dear Paige

I am writing to follow up on my prior request, submitted on [insert date of prior email], seeking reclassification of the above-referenced matter from the Commercial Arbitration Rules to the AAA Consumer Arbitration Rules.

Your office previously indicated that a determination regarding this classification would be provided by February 9, 2026. As of today, February 10, 2026, I have not received a response or update.

I respectfully reiterate that this matter must proceed under the Consumer Arbitration Rules for the following reasons:

- Standardized Contract of Adhesion: The governing agreement is Meta Platforms, Inc.'s Terms of Service, a non-negotiable, standardized consumer contract.
- Consumer Nature of the Dispute: The dispute arises from the suspension and labeling of a personal user account, not from any negotiated commercial relationship.
- Pro Se Consumer Status: I am an individual consumer representing myself. Imposing Commercial Arbitration administrative fees under these circumstances conflicts with the AAA Consumer Due Process Protocol.

Given the procedural posture of this case, I am requesting a same-day status update regarding the reclassification. I am currently holding submission of my Amended Statement of Claim (which includes an additional count for Tortious Interference) pending correction of the applicable fee schedule.

Please confirm receipt of this email and advise on next steps.

Sincerely,
Mina Awad
AAA Case No. 01-25-0005-5850
📞 954-446-4536

---

**AAA Paige Chevez** <PaigeChevez@adr.org>
To: mina rasm <minaawadny954@gmail.com>, AAA Paige Chevez <PaigeChevez@adr.org>
Cc: "Legal@meta.com" <Legal@meta.com>

Wed, Feb 11, 2026 at 4:14 PM

Mr. Awad,

This will confirm receipt of the below, which has been added to the case file.

Upon careful consideration of your contentions, a preliminary administrative determination has been made that the American Arbitration Association (AAA) Commercial Arbitration Rules apply in this matter. However, your contentions have been made a part of the file and may be presented to the arbitrator upon appointment for consideration.

Next steps will be to appoint the arbitrator. Given that we received an undeliverable email message for the Respondent, the rank list has been resent to the Respondent by mail and email, with a due date of February 18, 2026. At which point, we will proceed with inviting an arbitrator in accordance with the Rules.

Thank you,

Paige Chevez

 **Gmail**

mina rasm <minaawadny954@gmail.com>

---

# AMENDMENT NARROWING CLAIM TO $74,000: Case #01-25-0005-5850 — Mina Awad v. Meta Platforms, Inc.

1 message

---

**mina rasm** <minaawadny954@gmail.com>
To: AAA Paige Chevez <PaigeChevez@adr.org>
Cc: ip@fb.com

Tue, Feb 10, 2026 at 3:46 PM

### To the AAA Case Administrator,

Pursuant to AAA Consumer Rule R-6, I am filing this **Amendment Narrowing the Scope of Claim** for Case #01-25-0005-5850. I am voluntarily reducing my monetary demand to ensure this case proceeds under the **Consumer Arbitration Rules**.

### 1. Amended Monetary Claim:

I hereby amend and reduce my total claim to **$74,000**. I request that the AAA apply the **Consumer Fee Schedule** and appoint a single arbitrator under the Consumer track.

### 2. Amended Legal Claims:

- **Tortious Interference with Business Relations:** I hold **11 professional licenses**. I utilized my Facebook account as a primary tool for maintaining professional networks and client relations essential to my work under these licenses. By permanently disabling my account based on a false automated flag of "child sexual exploitation," Meta has intentionally and improperly interfered with my ability to conduct business and utilize these 11 licenses.
- **Breach of Contract:** Meta breached its Terms of Service by failing to provide a human review of a clearly erroneous AI-generated flag, resulting in the permanent loss of my professional data and access.

### 3. Evidence of Licenses:

My 11 professional licenses provide me with a "reasonable expectation of economic advantage." Meta's false internal "labeling" of my account—even if communicated privately—resulted in the total destruction of my business "rolodex" and professional communication channel, causing direct financial harm.

### 4. AI Disclosure:

I am disclosing that I used an AI assistant to help draft and calculate my initial $42.1 million filing. I am now amending that amount to this standardized consumer figure ($74,000) to better reflect my damages within the Consumer Arbitration framework.

I have copied Meta's legal team on this email. Please confirm receipt and provide an updated invoice for the consumer filing fee.

Sincerely,

**Mina Awad**

 **Gmail**

**mina rasm <minaawadny954@gmail.com>**

## FORMAL REQUEST FOR SUPERVISORY REVIEW – CONSUMER RULE APPLICABILITY – Case No. 01-25-0005-5850

**mina rasm** <minaawadny954@gmail.com>
To: AAA Paige Chevez <PaigeChevez@adr.org>
Cc: Legal@meta.com, ip@fb.com

Wed, Feb 11, 2026 at 5:41 PM

Dear Ms. Chevez,

FORMAL REQUEST FOR SUPERVISORY REVIEW OF CLASSIFICATION DETERMINATION

I respectfully request supervisory review of the administrative determination classifying this matter under the Commercial Arbitration Rules.

GOVERNING META TERMS OF SERVICE

The arbitration provision in Meta Platforms, Inc.'s Terms of Service expressly provides:

"The arbitration shall be administered by the American Arbitration Association (AAA) in accordance with its Consumer Arbitration Rules."

This language mandates administration under the AAA Consumer Arbitration Rules and does not reference application of the Commercial Rules.

APPLICABILITY UNDER AAA CONSUMER RULE R-1

Consumer Rule R-1 provides that the Consumer Arbitration Rules apply to disputes between an individual consumer and a business arising from a standardized, non-negotiated agreement.

This dispute meets that definition:

• I am an individual.
• The agreement is standardized and non-negotiable.
• The Facebook account at issue has existed for approximately 12–17 years.
• The account was created and primarily maintained for personal use.

CLARIFICATION REGARDING LICENSES AND INCIDENTAL ACTIVITY

While I am a licensed individual professionally, the Facebook account itself was not established as a negotiated business contract or commercial services agreement.

My primary use of the account over more than a decade was personal. I posted personal content, including videos relating to mortgage topics. On limited occasions, I may have used incidental advertising features; however, this was minimal and not reflective of a structured commercial enterprise or a separately negotiated business relationship with Meta.

The existence of professional licenses does not convert a long-standing personal social media account governed by standardized Terms of Service into a commercial contract.

CONSUMER DUE PROCESS CONSIDERATIONS

The AAA Consumer Due Process Protocol is designed to ensure accessibility and fairness for individuals in disputes with businesses. Applying the Commercial Rules materially alters the cost allocation contemplated by the governing agreement and imposes significantly higher administrative burdens on an individual claimant.

REQUEST

Because the governing agreement expressly mandates administration under the AAA Consumer Arbitration Rules , and because this dispute arises from a standardized consumer relationship, I respectfully request formal supervisory review of the current classification decision.

My continued participation in arbitrator selection and all proceedings remains UNDER PROTEST and WITHOUT WAIVER of my objection to classification.

Please confirm that this request has been forwarded for supervisory consideration and advise when a determination may be expected.

Sincerely,

Mina Awad

# CACE26002577, Mina Awad Plaintiff vs. Meta Platforms Inc Defendant

FL Circuit & County - Broward

Central Courthouse

**This case was retrieved on 03/06/2026**

## Header

**Case Number:** CACE26002577
**Date Filed:** 02/13/2026
**Date Full Case Retrieved:** 03/06/2026
**Status:** Open
**Misc:** (41) Other - Libel/Slander; Civil Action Central

## Details

**Judge(s):** Fahnestock, Fabienne E
**Uniform Case Number:** 062026CA002577AXXXCE
**Disposition Date:** 02/13/2026
**Disposition:** Active

## Participants

| Litigants | Attorneys |
|---|---|
| Awad, Mina | Pro Se |
| **Plaintiff** | Plaintiff |
| Meta Platforms Inc | |
| **Defendant** | |

## Proceedings

| Date | # | Proceeding Text | Details |
|---|---|---|---|
| 02/13/2026 | | Civil Cover Sheet | |
| 02/13/2026 | | Complaint | Additional Text<br>Plaintiff; Awad, Mina |
| 02/13/2026 | | No Summons Issued | |
| 02/13/2026 | | Per AOSC20-23 Amd12, Case is determined General | |
| 02/17/2026 | | Amended Complaint | Additional Text<br>Plaintiff; Awad, Mina |
| 02/17/2026 | | Copy | Additional Text<br>copy of amended summons for Meta Platforms Inc |
| 02/17/2026 | | eSummons Issuance - On Amended | Additional Text<br>Defendant; Meta Platforms Inc |
| 02/18/2026 | | Affidavit of Service | Additional Text<br>18th of February, 2026 at 12:00 pm; Defendant; Meta Platforms Inc |
| 02/23/2026 | | Emergency Motion | Additional Text<br>REQUEST FOR EMERGENCY RELIEF |

CACE26002577, Mina Awad Plaintiff vs. Meta Platforms Inc Defendant

| Date | # | Proceeding Text | Details |
|------|---|-----------------|---------|
| 02/23/2026 | | Exhibits | |
| 02/24/2026 | | Order Declining to Schedule Emergency/Urgent Hearing | |
| 02/25/2026 | | Notice of Filing | |
| 02/26/2026 | | Proof of Service | Additional Text<br> Plaintiff; Awad, Mina |
| 02/27/2026 | | Motion to Stay | Additional Text<br>PLAINTIFF S NOTICE OF FILING SUPPLEMENTAL EVIDENCE IN SUPPORT OF MOTION TO STAY ARBITRATION |
| 02/27/2026 | | Notice of Filing | |
| 02/27/2026 | | Notice of Filing | |
| 02/28/2026 | | Emergency Motion | Additional Text<br>REQUEST FOR EMERGENCY RELIEF; Plaintiff; Awad, Mina |
| 02/28/2026 | | Notice of Filing | Additional Text<br>EXHIBITS; Plaintiff; Awad, Mina |
| 02/28/2026 | | Notice of Filing | Additional Text<br>Proposed Order; Plaintiff; Awad, Mina |
| 02/28/2026 | | Notice of Hearing | Additional Text<br>Monday, March 2,2026, at 8:45 a.m |
| 03/02/2026 | | Affidavit of Service | Additional Text<br>18th of February, 2026 at 12:00 pm; Defendant; Meta Platforms Inc |
| 03/02/2026 | | Order Denying | Additional Text<br>ORDER DECLINING TO SCHEDULE EMERGENCY/URGENT HEARING |
| 03/02/2026 | | Proof of Service | Additional Text<br>18th of February, 2026 at 12:00 pm; Defendant; Meta Platforms Inc |
| 03/03/2026 | | Motion to Stay | Additional Text<br> Plaintiff; Awad, Mina |
| 03/03/2026 | | Notice of Hearing | Additional Text<br>March 24th, 2026 at 8:45 A.M. via ZOOM; Plaintiff; Awad, Mina |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**