# Exhibit A – Second Amended Complaint

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION



FILED BY____NH____D.C.

MAR 1 6 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

Case No.: 26-cv-60688-JMS

MINA AWAD,
Plaintiff,

v.

META PLATFORMS, INC. and
META PAYMENTS INC.,
Defendants.
_____/

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DEFAMATION PER SE AND UNJUST ENRICHMENT**

**MANDATORY AI DISCLOSURE AND CM/ECF STATUS**

1. The undersigned hereby certifies that generative artificial intelligence, specifically Paxton AI, Google Gemini, Cocounsel AI, and OpenAI ChatGPT, was used to assist in the research and drafting of this Second Amended Complaint. The undersigned has independently verified the accuracy of all legal citations and references. Plaintiff further certifies that he does not have CM/ECF access in this case and will file and serve by paper and mail unless otherwise ordered.

**I. PARTIES**

2. Plaintiff Mina Awad is a natural person and citizen of the State of Florida who resides in Broward County and appears pro se in this action.
3. Plaintiff is a licensed financial and real estate professional holding multiple active licenses, including:

a. an active mortgage license through the Nationwide Multistate Licensing System (NMLS #1894769);
b. designation as an IRS Enrolled Agent, authorized to represent taxpayers before the Internal Revenue Service;
c. real estate broker licenses issued by the States of Florida and Tennessee; and
d. Florida insurance licenses, including the 2-20 and 6-20 lines.

4. Defendant Meta Platforms, Inc. is a foreign corporation that operates the online platform at issue in this case.
5. On July 16, 2025, Plaintiff received the following notice from Meta Platforms, Inc.:

"Mina, you have 180 days to take action.
Hi Mina,
Your Facebook account has been suspended. This is because your account, or activity on it, doesn't follow our Community Standards on child sexual exploitation.
If you think we suspended your account by mistake, you have 180 days to appeal our decision. If you miss this deadline your account will be permanently disabled."

6. A copy of this suspension notice is attached as **Exhibit E.**
7. Plaintiff alleges that, to a reasonable reader, this notice conveyed a factual assertion, not merely a policy label or internal moderation category, that Plaintiff had engaged in criminal conduct related to the sexual exploitation of children.
8. Plaintiff denies that any such conduct occurred and asserts that the classification was false.
9. Plaintiff alleges that the statements were false. Plaintiff has never engaged in conduct related to child sexual exploitation, and no law-enforcement agency, regulatory authority, or investigative body has ever accused Plaintiff of such conduct.
10. Plaintiff further alleges that the notice resulted in immediate restriction of his account, followed by permanent disablement later the same day at approximately 3:32 p.m.
11. On September 19, 2025, Meta Platforms, Inc. responded to a complaint Plaintiff submitted to the Consumer Financial Protection Bureau ("CFPB"). The response stated in relevant part:

"Dear MINA AWAD,
Thank you for contacting us regarding your account(s) being disabled. After further investigation, we have determined that you are ineligible to use Facebook. Unfortunately, for safety and security reasons, we cannot provide additional information as to why your account(s) were disabled. We appreciate your understanding, as this decision is final. We hope this clarifies the matter and thank you again for taking the time to correspond with us. We now consider this matter to be closed.
Sincerely, Meta Platforms, Inc."

12. A copy of this CFPB correspondence is attached as **Exhibit H.**
13. Plaintiff alleges that this response confirms Meta Platforms, Inc. took final action to disable his account without providing any specific explanation for the account restrictions or the basis of the "Child Sexual Exploitation" classification.
14. Defendant Meta Payments Inc. is a Florida Profit Corporation incorporated in the State of Florida on December 10, 2010. Its Sunbiz corporate record is attached as **Exhibit C**, and its Articles of Incorporation are attached as **Exhibit D.**
15. Under 28 U.S.C. § 1332, a corporation is a citizen of the state in which it is incorporated and the state where it maintains its principal place of business.
16. Meta Payments Inc. operates payment-processing services associated with the platform used by Plaintiff.
17. On July 16, 2025, at approximately 2:58 p.m., during the same period Plaintiff's account was under a security lockout, Meta Payments Inc. processed a payment transaction in the amount of $10.64 using Plaintiff's Visa card ending in 3695, Transaction ID 23945108845175312-24112381608448039.

18. A copy of the payment receipt is attached as **Exhibit I**.
19. Plaintiff alleges that this transaction occurred after his account had already been restricted but shortly before it was permanently disabled at approximately 3:32 p.m.
20. Plaintiff further alleges that this payment resulted in a financial charge to him within the State of Florida, creating a localized injury and a separate state-law basis for liability.

## II. JURISDICTION, VENUE, AND JOINDER OF META PAYMENTS INC.

21. Defendant Meta Payments Inc. is a properly joined party in this action. Joinder is appropriate under Federal Rule of Civil Procedure 20 because the claims asserted against Defendants arise out of the same transaction or series of transactions and occurrences and present common questions of law and fact.

**Timeline of Events and Direct Participation**

22. The account records and billing history reflect the following sequence of events on July 16, 2025:

a. **2:55 p.m.** – Plaintiff's Facebook account was placed under a platform enforcement restriction based on an alleged violation of Meta's Community Standards relating to "Child Sexual Exploitation."
b. **2:58 p.m.** – During the restricted period, Meta Payments Inc. processed and retained a payment transaction in the amount of $10.64 using Plaintiff's Visa card ending in 3695.
c. **3:32 p.m.** – Plaintiff's account was permanently disabled.

23. The payment receipt, attached as **Exhibit I**, reflects the following billing details:

Transaction ID: 23945108845175312-24112381608448039
Reference Number: BCSDKUC8D2
Product Type: Meta Ads

24. The receipt further reflects that the charge was associated with advertising campaigns generating:

a. 406 impressions – $8.80;
b. 218 impressions – $1.84;

for a total charge of $10.64.

25. This sequence demonstrates that the payment transaction was processed after the enforcement restriction had already been applied but before the permanent disablement occurred.
26. The transaction therefore resulted in a financial charge to Plaintiff in Broward County, Florida, creating a localized financial injury within this jurisdiction.
27. The conduct described above forms part of the same series of events underlying Plaintiff's claims against Meta Platforms, Inc. The processing of a payment during the

restricted-access period presents common factual questions concerning the operation and coordination of Defendants' enforcement systems and payment-processing systems.

## Absence of Complete Diversity

28. Plaintiff is a citizen of the State of Florida. Defendant Meta Payments Inc. is incorporated in Florida, as reflected in **Exhibits C and D**. Because Plaintiff and Meta Payments Inc. share Florida citizenship, complete diversity of citizenship is absent.

## Violation of the Forum-Defendant Rule

29. Removal is also improper under 28 U.S.C. § 1441(b)(2). A civil action removable solely on the basis of diversity jurisdiction may not be removed if any properly joined and served defendant is a citizen of the state in which the action was brought.
30. Meta Payments Inc., a Florida entity with a registered agent in Tallahassee, Florida, is therefore a forum defendant, and its presence independently bars removal of this action from Florida state court.

## Proper Joinder and Independent Liability

31. The joinder of Defendant Meta Payments Inc. is proper because it directly participated in the events giving rise to Plaintiff's claims. Upon information and belief, Meta Payments Inc. operates the payment-processing infrastructure responsible for billing transactions associated with advertising services on the Meta platform.
32. On July 16, 2025, Plaintiff's Facebook account was placed under an enforcement restriction at approximately 2:55 p.m. based on an alleged violation of Meta's Community Standards relating to "Child Sexual Exploitation." Approximately 180 seconds later, at approximately 2:58 p.m., Meta Payments Inc. processed and retained a payment transaction in the amount of $10.64 using Plaintiff's Visa card ending in 3695 (Transaction ID: 23945108845175312-24112381608448039). The account was later permanently disabled at approximately 3:32 p.m.
33. The processing and retention of Plaintiff's funds during this enforcement window created a direct financial injury to Plaintiff within the State of Florida. The claims asserted against Meta Payments Inc. arise from its own conduct in processing and retaining Plaintiff's funds during the enforcement window and are therefore independent of Plaintiff's claims against Defendant Meta Platforms, Inc. This conduct gives rise to equitable and restitutionary causes of action under Florida law, including unjust enrichment, based on the retention of funds after the services associated with Plaintiff's account had already been restricted and were shortly thereafter terminated.
34. Because these claims arise from the same series of transactions and occurrences forming the basis of Plaintiff's claims against Defendant Meta Platforms, Inc., and because Meta Payments Inc. directly participated in the payment transaction at issue, joinder is proper under Federal Rule of Civil Procedure 20. At a minimum, Plaintiff has alleged facts demonstrating a reasonable possibility that a state court could impose liability on Meta Payments Inc. under Florida law. Accordingly, Meta Payments Inc. is a properly joined defendant whose conduct forms part of the same factual nucleus of this dispute. The

inclusion of Meta Payments Inc. is therefore based on its direct participation in the transaction giving rise to Plaintiff's financial injury and is not for the purpose of defeating federal jurisdiction.

**Mandatory Remand**

35. Because the presence of Meta Payments Inc. eliminates complete diversity of citizenship and independently triggers the forum-defendant rule under 28 U.S.C. § 1441(b)(2), removal of this action was improper.

36. Accordingly, pursuant to 28 U.S.C. § 1447(c), this Court should remand the action to the Seventeenth Judicial Circuit Court in and for Broward County, Florida, where the case was originally filed.

37. Plaintiff respectfully requests that the Court enter an Order remanding this action to the state court for further proceedings.

38. Because removal jurisdiction must be strictly construed, any doubts regarding the propriety of removal should be resolved in favor of remand.

**Absence of Fraudulent Joinder**

39. The inclusion of Defendant Meta Payments Inc. in this action is based on its direct participation in the events giving rise to Plaintiff's claims and is not for the purpose of defeating federal jurisdiction.

40. On July 16, 2025, Plaintiff's Facebook account was placed under an enforcement restriction at approximately 2:55 p.m., and approximately 180 seconds later, at approximately 2:58 p.m., Meta Payments Inc. processed and retained a charge to Plaintiff in the amount of $10.64 using Plaintiff's Visa card ending in 3695. The account was later permanently disabled at approximately 3:32 p.m.

41. By processing and retaining this payment during the enforcement window, Meta Payments Inc. caused an independent financial injury to Plaintiff within the State of Florida. This conduct gives rise to equitable and restitutionary claims under Florida law, including unjust enrichment, based on the retention of funds after the services associated with Plaintiff's account were restricted and subsequently terminated.

42. The conduct of Meta Payments Inc. forms part of the same series of transactions and occurrences underlying Plaintiff's claims against Defendant Meta Platforms, Inc., including the enforcement action applied to Plaintiff's account and the commercial transaction processed during that same enforcement window.

43. Because Plaintiff has asserted specific facts demonstrating Meta Payments Inc.'s direct involvement in the transaction at issue, there exists at least a reasonable possibility that a state court could impose liability under Florida law. The joinder of Meta Payments Inc. is therefore proper and cannot be characterized as fraudulent. As a result, Meta Payments Inc. is a properly joined defendant whose presence destroys complete diversity and independently triggers the forum-defendant rule.

44. Plaintiff further alleges that the claims asserted against Defendant Meta Payments Inc. present at least a possible cause of action under Florida law. Meta Payments Inc. processed and retained a financial transaction from Plaintiff's account during the same enforcement window in which Plaintiff's account access was restricted and later

terminated. The retention of funds under these circumstances gives rise to equitable and restitutionary claims under Florida law, including unjust enrichment and conversion.

45. Under the governing standard for fraudulent joinder, a defendant cannot be considered fraudulently joined where there exists any reasonable possibility that a state court could impose liability based on the pleaded facts.

46. Because Meta Payments Inc. directly participated in the payment transaction that forms part of the factual nucleus of this dispute, its joinder is proper under the rules governing permissive joinder of parties.

47. Meta Payments Inc. conducts payment-processing activities involving consumers within the State of Florida, and its actions in processing and retaining Plaintiff's payment occurred in connection with a transaction affecting a Florida resident.

48. Accordingly, the inclusion of Meta Payments Inc. in this action is based on its direct involvement in the events giving rise to Plaintiff's claims and cannot reasonably be characterized as fraudulent joinder.

## III. NATURE OF THE ACTION

49. Plaintiff utilized the Facebook platform, specifically a verified mortgage business page, to provide professional services to clients and to maintain his professional presence as an NMLS-licensed mortgage professional (NMLS #1894769).

50. On July 16, 2025, at approximately 2:55 p.m., Defendants' automated enforcement systems restricted Plaintiff's account and applied the label "Community Standards on Child Sexual Exploitation."

51. Approximately three minutes later, at approximately 2:58 p.m., Defendant Meta Payments Inc. processed and retained a payment transaction in the amount of $10.64 using Plaintiff's Visa card ending in 3695. This transaction is documented in **Exhibit I**.

52. Plaintiff alleges that Defendants applied the above characterization despite the absence of any factual basis indicating that Plaintiff had engaged in conduct related to child sexual exploitation. Within approximately 180 seconds of the enforcement designation, Defendant Meta Payments Inc. affirmatively processed and retained the payment transaction after a manual payment request had been generated on Plaintiff's Florida-based financial instrument.

53. Evidence supporting a reasonable inference of pretextual enforcement is reflected in Plaintiff's Account-Level Logs, downloaded on February 18, 2026 and attached as **Exhibit F**. These logs contain no entries reflecting investigative review activity during the suspension period. Plaintiff alleges that the absence of investigative entries, combined with the continued processing of a commercial payment during the enforcement window, supports a plausible inference that the "Child Sexual Exploitation" designation was applied without a genuine investigative determination.

54. By maintaining the enforcement designation while simultaneously processing a commercial transaction, Defendants continued to apply a characterization implying criminal conduct while Plaintiff's business assets and account access were restricted.

55. Plaintiff initiated arbitration through the American Arbitration Association ("AAA") on November 11, 2025, in good faith based on Defendants' dispute procedures. Plaintiff advanced the required $2,450 filing fee, while Defendant Meta declined to advance arbitration fees or meaningfully participate in the arbitration process. The arbitration

administrator later placed the matter in administrative abeyance pending the outcome of the present litigation. Plaintiff alleges that this sequence demonstrates Plaintiff's good-faith effort to resolve the dispute through the procedures offered by Defendants, while Defendants failed to meaningfully engage in the arbitration process. Relevant AAA correspondence is attached as **Exhibit J**.

## IV. LIABILITY AND INAPPLICABILITY OF SECTION 230 IMMUNITY

56. Florida long-arm jurisdiction and venue are proper because Defendants transmitted enforcement and regulatory communications into Florida that were accessed in Broward County and caused injury there.

57. Plaintiff alleges that 47 U.S.C. § 230 does not bar these claims because Defendants acted as an "information content provider." Defendants did not merely host third-party content; they affirmatively authored the defamatory labels and narrative reports.

58. On July 16, 2025, Meta authored and published a defamatory "Security Warning" containing specific criminal implications. This was not a neutral, automated notification, but an affirmatively drafted statement by Meta acting as an information content provider.

59. As detailed in the Affidavit of Yulia Bokk, attached as **Exhibit G**, this defamatory content was viewed by a third party on a shared household computer in Margate, Florida. Because Defendant communicated this false characterization to an individual other than Plaintiff, the publication element of defamation under Florida law is satisfied.

60. Plaintiff alleges that Meta acted as an information content provider when it drafted and submitted a narrative response to the CFPB on September 19, 2025. In that response, Meta affirmatively stated:

"After further investigation, we have determined that you are ineligible to use Facebook."

61. This statement originated solely from Meta and was not based on third-party content. This "investigation" claim is directly contradicted by Plaintiff's account-level logs, attached as **Exhibit F**, which reflect no meaningful investigative activity during the suspension period. By reporting a false investigative conclusion to a federal regulator to justify the destruction of Plaintiff's NMLS-linked business operations, Meta authored and published a defamatory statement that falls outside the scope of Section 230 immunity.

62. Plaintiff alleges that Meta's designation associating Plaintiff with "Child Sexual Exploitation" carries severe criminal implications. Such language would reasonably lead readers to conclude that Plaintiff had engaged in criminal misconduct involving the exploitation of minors. Plaintiff alleges that this characterization was created and communicated by Meta itself and was not derived from any third-party accusation.

63. Plaintiff alleges that Defendants acted with actual malice, as demonstrated by the following sequence of events on July 16, 2025:

a. 2:55 p.m. – Defendants generated the "Community Standards on Child Sexual Exploitation" designation and initiated account disabling;
b. 2:58 p.m. – Defendants' payment-processing affiliate processed a $10.64 transaction; and
c. 3:32 p.m. – Only after the transaction had been completed did Defendants finalize the permanent account ban.

64. Plaintiff alleges that this 180-second interval demonstrates that Defendants did not treat the alleged violation as an immediate security or compliance threat. Financial institutions and payment processors commonly restrict financial activity when confronted with indicators of serious unlawful conduct. Plaintiff further alleges that federal compliance frameworks, including the Bank Secrecy Act, Anti-Money Laundering (AML), and Know Your Customer (KYC) obligations, ordinarily involve heightened review and may restrict transactions when confronted with indicators of serious unlawful activity. Defendants' decision to process a commercial payment during the enforcement window supports a reasonable inference that the designation was a pretextual justification for disabling Plaintiff's account and restricting access to business assets only after the final transaction, evidencing actual malice and bad faith.

65. Plaintiff alleges that the July 16, 2025 timeline supports a reasonable inference that Defendants did not treat the "Child Sexual Exploitation" designation as an immediate safety threat. Defendants applied the enforcement label at approximately 2:55 p.m., yet continued to process a commercial payment transaction at approximately 2:58 p.m., and did not permanently disable the account until approximately 3:32 p.m.

66. This sequence supports a plausible inference that the designation was applied as part of an automated enforcement process rather than the result of an actual investigation into criminal conduct.

67. Plaintiff alleges that the "Child Sexual Exploitation" label on July 16, 2025, and the subsequent "safety and security" narrative provided to the CFPB on September 19, 2025, were not third-party content. These were Meta-authored factual assertions created exclusively by Meta's internal compliance systems. Meta acted as an information content provider under 47 U.S.C. § 230(f)(3) by developing and assigning a specific criminal status to Plaintiff's account, a status that did not exist until Meta's systems generated it.

68. Plaintiff alleges that no third-party content ever accused Plaintiff of child sexual exploitation. Meta's automated systems and human moderators independently created, assigned, and disseminated this phrase.

69. Plaintiff alleges that these labels conveyed to a reasonable reader, including Plaintiff's wife, that Plaintiff engaged in heinous criminal conduct. Meta's systems published the statement quoted in paragraph 5 above.

70. This constitutes defamation per se because it directly impugns Plaintiff's professional fitness as an NMLS Mortgage Loan Originator, IRS Enrolled Agent, and licensed real estate and insurance professional. Allegations of criminal exploitation conduct are incompatible with the moral character requirements imposed by the regulatory bodies governing these professions.

71. In response to CFPB Complaint No. 250829-23625959, Meta published a written statement reaffirming the defamatory designation, attached as **Exhibit H.**

72. On February 18, 2026, Plaintiff downloaded account and activity logs covering July 16, 2025, through February 18, 2026. These logs, attached as **Exhibit F**, show no evidence of internal investigation, safety review, or suspicious activity reports. The absence of any investigative metadata supports a reasonable inference that Meta's "safety and security" justification was pretextual.

73. The July 16 compliance contradiction and publication are further reflected as follows:

a. 2:55 p.m. – Meta applied the CSE enforcement tag;

b. 2:58 p.m. – Meta Payments, Inc. processed a $10.64 transaction; and

c. Publication to Plaintiff's wife occurred on the shared household computer, satisfying the publication element required for defamation under Florida law (**Exhibit G**).

74. Plaintiff alleges that the continued maintenance of the enforcement designation throughout the suspension period further demonstrates Defendants' reckless disregard for the truth or falsity of the accusation.

75. Plaintiff does not challenge Defendants' right to moderate or remove user-generated content from their platform. Rather, Plaintiff challenges Defendants' independent creation and publication of a false factual assertion that Plaintiff engaged in conduct related to child sexual exploitation. The statements at issue were authored and communicated by Defendants themselves and were not supplied by any third party. Accordingly, Defendants acted as an information content provider within the meaning of 47 U.S.C. § 230(f)(3), and the claims asserted herein arise from Defendants' own statements and conduct rather than from the moderation of third-party content.

76. Defendants materially contributed to the creation and development of the defamatory content by generating and assigning the specific enforcement designation linking Plaintiff's account to "Child Sexual Exploitation." This designation was created and applied by Defendants' own systems and moderation processes and was not supplied by any third party.

77. Plaintiff alleges that downloaded account-level logs obtained on February 18, 2026 contain no entries reflecting investigative activity consistent with a manual safety review. Plaintiff therefore alleges that the enforcement designation was applied without a documented investigative determination.

78. Plaintiff seeks general and compensatory damages in an amount to be determined by the jury, but believed to exceed $2,100,000, including presumed damages arising from defamation per se, harm to reputation, damage to professional standing, emotional distress, humiliation, and loss of standing in Plaintiff's trade, profession, and business community; restitution of the $10.64 charge; punitive damages; costs of suit; and such other relief as the Court deems just and proper.

## V. CLAIMS FOR RELIEF

## COUNT I – DEFAMATION PER SE

*(Against Defendant Meta Platforms, Inc.)*

79. Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

80. On or about July 16, 2025, Defendant Meta Platforms, Inc. permanently disabled Plaintiff's Facebook account and associated business page after applying an enforcement designation identifying Plaintiff's account as violating Meta's Community Standards relating to "Child Sexual Exploitation."

81. Meta subsequently reaffirmed this designation on or about September 19, 2025 in a written response to a complaint submitted to the Consumer Financial Protection Bureau,

stating that a "further investigation" had been conducted and that the decision to maintain the enforcement action was final.

82. These statements were not merely the passive hosting or moderation of third-party content. Rather, they were affirmative enforcement determinations authored and published by Meta concerning Plaintiff's identity and alleged conduct.

83. Plaintiff alleges that these statements were false and defamatory and were published by Meta with knowledge of their falsity or with reckless disregard for the truth.

84. Accusations relating to sexual exploitation of children are among the most serious criminal allegations that can be made against an individual. Plaintiff alleges that Meta's publication of this designation created an immediate and severe stigma that would cause any reasonable reader to view Plaintiff as having engaged in criminal conduct involving minors.

85. Plaintiff alleges that the statements were false. Plaintiff has never engaged in conduct related to child sexual exploitation, and no law-enforcement agency, regulator, or investigative authority has ever accused Plaintiff of such conduct.

86. At approximately 2:55 p.m. on July 16, 2025, Meta designated Plaintiff's account as a safety threat under its "Child Sexual Exploitation" policy. Approximately three minutes later, at approximately 2:58 p.m., Meta's billing system processed and retained a payment transaction in the amount of $10.64 from Plaintiff's account.

87. Plaintiff alleges that this sequence demonstrates that Meta continued commercial interaction with Plaintiff while simultaneously designating Plaintiff as a purported safety threat, supporting a reasonable inference that the designation was not treated as a genuine safety emergency.

88. Additionally, account-level activity logs downloaded by Plaintiff on February 18, 2026 show no investigative or review activity relating to the alleged violation during the period of the account suspension.

89. Meta's publication associating Plaintiff with "Child Sexual Exploitation" would cause a reasonable reader, including regulators, clients, professional contacts, or household members, to conclude that Plaintiff engaged in criminal conduct involving the sexual exploitation of children and is professionally unfit to handle sensitive financial and legal matters.

90. Such accusations strike directly at the core of Plaintiff's professional reputation and his ability to maintain multiple fiduciary licenses that require strict moral character qualifications and regulatory oversight, including:

a. NMLS Mortgage Loan Originator License (1894769);

b. IRS Enrolled Agent Status (00153764-EA);

c. Florida Real Estate Broker License (BK3269643);

d. Tennessee Real Estate Broker License (356772); and

e. Florida 2-20 Insurance Agent and 6-20 Adjuster Licenses (W317642).

91. Because these professions require strict good moral character standards and continuous regulatory monitoring, statements linking Plaintiff to criminal exploitation conduct constitute defamation per se, for which damages are presumed.

92. To a reasonable reader, Meta's enforcement designation communicated as a factual assertion that Plaintiff had engaged in criminal conduct involving the sexual exploitation

of minors. Such a statement would naturally harm Plaintiff's reputation and professional standing.

93. Plaintiff's continued professional licensure provides additional circumstantial evidence of the falsity of Meta's accusations.

94. At all relevant times, Plaintiff has remained subject to regulatory oversight and background monitoring by federal and state authorities, including the Internal Revenue Service, the Nationwide Multistate Licensing System, and the Florida Department of Financial Services.

95. Plaintiff alleges that it would be highly inconsistent for an individual to maintain these credentials, each requiring rigorous background checks and ongoing regulatory monitoring, while simultaneously engaging in the criminal conduct implied by Meta's designation.

96. Despite the absence of any criminal investigation, regulatory action, or documented evidence supporting its accusation, Meta maintained the "Child Sexual Exploitation" designation associated with Plaintiff's account.

97. Meta's conduct supports a plausible inference of reckless disregard and actual malice, including the following circumstances:

a. Financial contradiction: on July 16, 2025, Meta designated Plaintiff's account as a safety threat at approximately 2:55 p.m., yet knowingly processed and retained a payment transaction from Plaintiff at approximately 2:58 p.m.;

b. Immediate professional notice: on July 17, 2025, Plaintiff notified Meta through multiple communications that the enforcement designation was false and that the suspension was causing severe professional harm to his licensed mortgage brokerage business and professional reputation;

c. Formal legal demand: on September 2, 2025, Plaintiff transmitted a written demand to Meta via certified mail and electronic correspondence. The certified mailing was delivered on September 6, 2025 at approximately 9:47 a.m. in Menlo Park, California 94025 (USPS Tracking No. 9589 0710 5270 0366 8098 56), reflected in **Exhibit B** if attached there;

d. Regulatory statement: despite receiving notice disputing the accuracy of the enforcement designation, Meta reaffirmed its accusations in its September 19, 2025 response to the CFPB, asserting that its decision was supported by "further investigation"; and

e. Absence of investigative records: account logs obtained by Plaintiff on February 18, 2026 show no investigative activity or review entries relating to the alleged violation, supporting a plausible inference that the enforcement narrative was pretextual.

98. As a direct and proximate result of Meta's defamatory publications, Plaintiff has suffered substantial reputational harm, damage to his professional standing, and loss of business opportunities.

## RELIEF REQUESTED – COUNT I

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant Meta Platforms, Inc., and award the following relief:

a. General and compensatory damages in an amount to be determined by the jury, but believed to exceed $2,100,000, including presumed damages arising from defamation per se, harm to reputation, damage to professional standing, emotional distress, humiliation, and loss of standing in Plaintiff's trade, profession, and business community;

b. To the extent proven at trial, special damages for lost professional opportunities, client relationships, and business income resulting from Defendant's defamatory publications;

c. Presumed damages, because the statements constitute defamation per se and damage to Plaintiff's reputation is presumed;

d. Punitive damages in an amount to be determined by the jury;

e. Costs of suit; and

f. Such other and further relief as the Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT

*(Against Defendant Meta Payments Inc.)*

99. Plaintiff realleges and incorporates by reference paragraphs 1 through 98 as though fully set forth herein.

100. On July 16, 2025, Plaintiff conferred a monetary benefit upon Defendant Meta Payments Inc. when Defendant processed and retained a payment transaction in the amount of $10.64 using Plaintiff's Visa card ending in 3695.

101. The transaction is identified by:

Transaction ID: 23945108845175312-24112381608448039
Reference Number: BCSDKUC8D2

102. At approximately 2:55 p.m., Plaintiff's account was placed under platform enforcement restrictions.

103. At approximately 2:58 p.m., while the account was restricted, Defendant Meta Payments Inc. processed and retained the advertising payment described above.

104. At approximately 3:32 p.m., Plaintiff's account was permanently disabled.

105. Defendant Meta Payments Inc., acting as the payment-processing entity responsible for advertising transactions on the Meta platform, knowingly accepted and retained the benefit of this payment transaction.

106. Meta Payments Inc. has retained the benefit of this transaction.

107. It would be inequitable and unjust for Meta Payments Inc. to retain this payment because:

a. the transaction was processed while Plaintiff's account was already under platform enforcement restrictions;

b. Plaintiff's account was permanently disabled shortly thereafter;

c. the payment therefore conferred no meaningful service or benefit to Plaintiff; and

d. Defendants simultaneously characterized Plaintiff as a serious safety threat while continuing to extract payment from Plaintiff's financial instrument.

108.     Plaintiff alleges that Defendant's conduct was undertaken willfully and with reckless disregard for Plaintiff's rights, including the decision to process and retain the payment transaction during the brief interval between the enforcement designation and the permanent disablement of Plaintiff's account.

109.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and financial loss.

## RELIEF REQUESTED – COUNT II

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant Meta Payments Inc., and award the following relief:

a. Restitution of the payment in the amount of $10.64;

b. Disgorgement of all benefits obtained through the retention of Plaintiff's funds;

c. Punitive damages in an amount to be determined by the jury;

d. Costs of suit; and

e. Such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Enter judgment in favor of Plaintiff and against Defendants;

b. Award compensatory damages;

c. Award presumed damages arising from defamation per se;

d. Award punitive damages;

e. Order restitution of the $10.64 payment transaction;

f. Award costs of suit; and

g. Grant such other and further relief as the Court deems just and proper.

**By:** /s/ Mina Awad
**Mina Awad**
Pro Se Plaintiff
439 N. Laurel Dr.
Margate, FL 33063
Phone: (954) 446-4536
Email: minaawadny954@gmail.com

03-16

## CERTIFICATE OF SERVICE

I certify that on 03-16-2026 I. Served the foregoing by [U.S. Mail/overnight delivery] on counsel for Defendants at Diana Marie Fassbender

Orrick, Herrington & Sutcliffe LLP
215 NW 24th Street, Suite 200
Miami, Florida 33127
Email: dszego@orrick.com

and on any unrepresented parties, and that I will file proof of service with the Court. Plaintiff certifies service will be by paper and mail, absent CM/ECF access.

# Exhibit B: Email Correspondence

**March 10, 2026 (11:27 PM):** Plaintiff sent a timely and explicit response to defense counsel stating that he could not consent to their request for an extension and would proceed according to court rules

**Purpose of Exhibit:** This correspondence provides evidence of Plaintiff's diligent compliance with Local Rule 7.1 and refutes any suggestion that Plaintiff failed to provide a timely position regarding the Defendants' requests

 Gmail

**mina rasm <minaawadny954@gmail.com>**

---

## MEET AND CONFER: Motion for Leave to File Second Amended Complaint - Case No. CACE-26-0002577

5 messages

---

**mina rasm** <minaawadny954@gmail.com>                              Sun, Mar 8, 2026 at 1:17 AM
To: Rochelle <rswartz@orrick.com>, "Fassbender, Diana Szego" <dszego@orrick.com>, "Wolf, Sarah" <swolf@orrick.com>

  ALL.pdf

  Motion for Leave to File Second Amended
Complaint.pdf

**Dear Counsel,**

Please find attached a **draft** of the Plaintiff's proposed **Second Amended Complaint** and the associated **Motion for Leave to Amend.**

I am providing these documents to you as a formal "meet and confer" pursuant to the Broward County Local Rules and the Florida Rules of Civil Procedure.

The proposed Second Amended Complaint includes several critical updates, including:

- Specific allegations regarding third-party publication in Broward County (including spousal publication);

- Details regarding the current abeyance of the AAA arbitration;

- The voluntary withdrawal of punitive damage claims to ensure strict compliance with Section 768.72, Florida Statutes;

- Mandatory AI Disclosure pursuant to Administrative Order 2026-03-Gen.

Please let me know by **5:00 PM on Monday, March 9, 2026,** if Meta consents to the filing of this Second Amended Complaint or if you intend to object. If I do not hear from you by that time, I will proceed with filing the Motion for Leave and will indicate to the Court that the motion is opposed or that no response was received.

Respectfully,

**Mina Awad, Pro Se** 439 N. Laurel Dr. Margate, FL 33063 (954) 446-4536 minaawadny954@gmail.com

---

**Swartz, Rochelle** <rswartz@orrick.com>                              Tue, Mar 10, 2026 at 2:04 PM
To: mina rasm <minaawadny954@gmail.com>
Cc: "Fassbender, Diana Szego" <dszego@orrick.com>, "Wolf, Sarah" <swolf@orrick.com>

Mr. Awad,

Meta has removed this case to federal court. Please see a courtesy copy of our filings attached here, which we will also serve on you via mail.

Regarding your request to file a second amended complaint, if you will consent to give Meta 30 days after your filing to respond to the new complaint, then we will consent to the amendment. If you agree, we can prepare and file a stipulation to inform the court.

We would appreciate if you would let us know your decision today.

Thanks,
Rochelle

**Rochelle Swartz**
Senior Associate

Orrick

New York   V-
card

T +1-212-506-5367
M +1-516-439-0904
rswartz@orrick.com

Orrick

---

**From:** mina rasm <minaawadny954@gmail.com>
**Date:** Sunday, March 8, 2026 at 1:17 AM
**To:** Swartz, Rochelle <rswartz@orrick.com>, Fassbender, Diana Szego <dszego@orrick.com>, Wolf, Sarah <swolf@orrick.com>
**Subject:** MEET AND CONFER: Motion for Leave to File Second Amended Complaint - Case No. CACE-26-0002577

[EXTERNAL]

[Quoted text hidden]

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

📄 **Awad v. Meta - Notice of Removal[30].pdf**
26245K

---

**Swartz, Rochelle** <rswartz@orrick.com>                    Tue, Mar 10, 2026 at 6:40 PM
To: mina rasm <minaawadny954@gmail.com>
Cc: "Fassbender, Diana Szego" <dszego@orrick.com>, "Wolf, Sarah" <swolf@orrick.com>

Mr. Awad,

As a follow up, in the event that you are no longer planning to amend your complaint, we would ask that you consent to allowing 14 days from today to respond to your First Amended Complaint (March 31, 2026).

If we do not hear from you tonight, we will file an expedited motion with the court tomorrow requesting these extensions.

Rochelle

[Quoted text hidden]

---

**mina rasm** <minaawadny954@gmail.com>                                         Tue, Mar 10, 2026 at 11:27 PM
To: "Swartz, Rochelle" <rswartz@orrick.com>
Cc: "Fassbender, Diana Szego" <dszego@orrick.com>, "Wolf, Sarah" <swolf@orrick.com>

Rochelle,

I have received your email and the courtesy copy of the removal filings.

Given that the case was removed today, I am currently reviewing the Federal Rules of Civil Procedure as well as the Local Rules of the United States District Court for the Southern District of Florida. At this time, I am not in a position to consent to any extensions or scheduling agreements. For now, I will proceed in accordance with the applicable court rules and deadlines.

Additionally, please remove any automatic or recommended reply options from future communications. I want to ensure that my toddler daughter does not accidentally respond to an email from my device.

Regards,
Mina Awad

[Quoted text hidden]

---

**Swartz, Rochelle** <rswartz@orrick.com>                                        Wed, Mar 11, 2026 at 12:33 PM
To: mina rasm <minaawadny954@gmail.com>
Cc: "Fassbender, Diana Szego" <dszego@orrick.com>, "Wolf, Sarah" <swolf@orrick.com>

Mr. Awad,

Attached please find courtesy copies of our motion, which we filed this morning, and the court's order on the motion.

Thanks,
Rochelle

**From:** mina rasm <minaawadny954@gmail.com>
**Date:** Tuesday, March 10, 2026 at 11:27 PM
**To:** Swartz, Rochelle <rswartz@orrick.com>
**Cc:** Fassbender, Diana Szego <dszego@orrick.com>, Wolf, Sarah <swolf@orrick.com>
**Subject:** Re: MEET AND CONFER: Motion for Leave to File Second Amended Complaint - Case No. CACE-26-0002577

[EXTERNAL]

[Quoted text hidden]
[Quoted text hidden]

---

**3 attachments**

# Exhibit C – Sunbiz corporate record for Meta Payments Inc.



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name /

# Detail by Entity Name

Florida Profit Corporation
META PAYMENTS INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | P10000100169 |
| **FEI/EIN Number** | 27-4444984 |
| **Date Filed** | 12/10/2010 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | NAME CHANGE AMENDMENT |
| **Event Date Filed** | 07/14/2022 |
| **Event Effective Date** | NONE |

**Principal Address**

1 Meta Way
Menlo Park, CA 94025

Changed: 09/12/2025

**Mailing Address**

1 Meta Way
Menlo Park, CA 94025

Changed: 09/12/2025

**Registered Agent Name & Address**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301-2525

**Officer/Director Detail**

**Name & Address**

Title Director

Heaton, Chad
1 Meta Way
Menlo Park, CA 94025

Title Director

# Exhibit D – Articles of Incorporation for Meta Payments Inc.



## Florida Department of State
### Division of Corporations
### Electronic Filing Cover Sheet

Note: Please print this page and use it as a cover sheet. Type the fax audit number (shown below) on the top and bottom of all pages of the document.

(((H10000265512 3)))



H100002855123ABCW

Note: DO NOT hit the REFRESH/RELOAD button on your browser from this page. Doing so will generate another cover sheet.

To:
    Division of Corporations
    Fax Number    : (850)617-6381

From:
    Account Name   : ROGERS, TOWERS, BAILEY, ET AL
    Account Number : 076666002273
    Phone        : (904)398-3911
    Fax Number   : (904)396-0663

**Enter the email address for this business entity to be used for future annual report mailings. Enter only one email address please.**

Email Address: _fclanflone@rtlaw.com_

---

### FLORIDA PROFIT/NON PROFIT CORPORATION
### FACEBOOK PAYMENTS INC.

| | |
|---|---|
| Certificate of Status | 1 |
| Certified Copy | 1 |
| Page Count | 04 |
| Estimated Charge | $87.50 |

Electronic Filing Menu    Corporate Filing Menu    Help

T. Buroh DEC 13 2010

Dec. 10. 2010 10:24AM

No. 1154   P. 2

H10000265512 3

# ARTICLES OF INCORPORATION
## OF
## FACEBOOK PAYMENTS INC.

### ARTICLE I - NAME

The name of the corporation is: Facebook Payments Inc. (the "Corporation").

### ARTICLE II - ADDRESS

The street address of the principal office and mailing address of the Corporation is 1601 South California Avenue, Palo Alto, California 94304.

### ARTICLE III - CAPITAL STOCK

The Corporation is authorized to issue 1,000 shares of common stock, all of which shall be of the par value of $0.01 per share.

### ARTICLE IV - INITIAL REGISTERED OFFICE AND AGENT

The street address of the initial registered office of the Corporation is 1201 Hays Street, Leon County, Tallahassee, Florida, 32301, and the name of its initial registered agent at such address is Corporation Service Company.

### ARTICLE V - INITIAL BOARD OF DIRECTORS

The number of Directors constituting the initial Board of Directors of this Corporation shall be three and the names and addresses of such persons who are to serve as members thereof are:

| NAME | ADDRESS |
| --- | --- |
| Ted Ullyot | 1601 South California Avenue, Palo Alto, California 94304 |
| David Ebersman | 1601 South California Avenue, Palo Alto, California 94304 |
| Dan Rose | 1601 South California Avenue, Palo Alto, California 94304 |

### ARTICLE VI - INCORPORATOR

The name and address of the sole Incorporator of the Corporation is as follows: Douglas H. Shaver, 1301 Riverplace Boulevard, Suite 1500, Jacksonville, Florida 32207.

H10000265512 3

Dec. 10. 2010 10:24AM

No. 1154   P. 3



H100002655123

## ARTICLE VII - AMENDMENT

The Corporation reserves the right to amend, alter, change or repeal any provision contained in its Articles of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon shareholders herein are granted subject to this reservation.

## ARTICLE VIII - PURPOSE

The Corporation is organized for the purpose of transacting any or all lawful business.

## ARTICLE IX - COMMENCEMENT

This Corporation shall commence on the date on which these Articles of Incorporation are filed with the Secretary of State of Florida.

## ARTICLE X - INDEMNIFICATION

The Corporation shall indemnify any officer, director or incorporator, or any former officer, director or incorporator, of the Corporation to the fullest extent permitted by law.

IN WITNESS WHEREOF, the undersigned Incorporator has executed these Articles of Incorporation this 9th day of December, 2010.

Douglas H. Shaver,
Incorporator

H100002655123

Dec. 10. 2010 10:24AM                                                      No. 1154   P. 4

H100002655123

## CERTIFICATE OF DESIGNATION
## REGISTERED AGENT/REGISTERED OFFICE

Pursuant to the provisions of section 607.0501, Florida Statutes, the below named Corporation, organized under the laws of the State of Florida, submits the following statement in designating the registered office/registered agent, in the State of Florida.

1.      The name of the Corporation is:

        Facebook Payments Inc.

2.      The name and address of the registered agent and office are:

        Corporation Service Company
        1201 Hays Street
        Leon County
        Tallahassee, Florida 32301

HAVING BEEN NAMED AS REGISTERED AGENT AND TO ACCEPT SERVICE OF PROCESS FOR THE ABOVE STATED CORPORATION AT THE PLACE DESIGNATED IN THIS CERTIFICATE, I HEREBY ACCEPT THE APPOINTMENT AS REGISTERED AGENT AND AGREE TO ACT IN THIS CAPACITY. I FURTHER AGREE TO COMPLY WITH THE PROVISIONS OF ALL STATUTES RELATING TO THE PROPER AND COMPLETE PERFORMANCE OF MY DUTIES, AND I AM FAMILIAR WITH AND ACCEPT THE OBLIGATIONS OF MY POSITION AS REGISTERED AGENT.

December 9, 2010.

Corporation Service Company,
Registered Agent
        Sonya L. Cordell
        Assistant VP

JAX\1481847_1                                    -3-

H100002655123

# Exhibit E

**Facebook Suspension Notice and Initial Accusation (Timestamped July 16, 2025, at 2:55 PM)**

 Gmail

**mina rasm <minaawadny954@gmail.com>**

## Action needed on your Facebook account
1 message

**Facebook** <security@facebookmail.com>
Reply-To: noreply <noreply@facebookmail.com>
To: Mina Awad <minaawadny954@gmail.com>

Wed, Jul 16, 2025 at 2:55 PM



## Mina, you have 180 days to take action.

Hi Mina,

Your Facebook account has been suspended. This is because your account, or activity on it, doesn't follow our Community Standards on child sexual exploitation.

If you think we suspended your account by mistake, you have 180 days to appeal our decision. If you miss this deadline your account will be permanently disabled.

 **Mina Awad**

Appeal

You can learn more about why we suspend accounts by visiting the Community Standards.

Thanks,
The Facebook team

This message was sent to minaawadny954@gmail.com at your request.
Meta Platforms, Inc., Attention: Community Support, 1 Meta Way, Menlo Park, CA 94025

# Exhibit F – Meta account activity logs

**Logins and Logouts**

A history of your logins and logouts

Generated by Mina Awad on Wednesday, February 18, 2026 at 11:31 PM UTC-04:00

## Log out

| | |
|---|---|
| Time | Jul 16, 2025 3:04:09 pm |
| IP address | 2601:586:400:7be0:dd49:8084:82fa:675e |
| Site | www.facebook.com |

## Login

| | |
|---|---|
| Time | Jun 24, 2025 4:17:50 pm |
| IP address | 2601:586:400:7be0:291e:7bcc:c95f:b796 |
| Site | www.facebook.com |

## Log out

| | |
|---|---|
| Time | Jun 24, 2025 11:04:48 am |
| IP address | 2601:589:4102:cb8d:ec82:10dd:cd5c:72fd |
| Site | www.facebook.com |

## Login

| | |
|---|---|
| Time | Feb 20, 2025 10:22:54 pm |
| IP address | 2601:586:400:7be0:5f63:52a:32fe:a76d |
| Site | m.facebook.com |

## Log out

| | |
|---|---|
| Time | Feb 20, 2025 10:22:53 pm |
| IP address | 2601:586:400:7be0:5f63:52a:32fe:a76d |
| Site | m.facebook.com |

## Login

Time          Feb 20, 2025 10:22:53 pm

IP address    2601:586:400:7be0:5f63:52a:32fe:a76d

Site          m.facebook.com

## Log out

Time          Jan 02, 2025 8:40:27 am

IP address    2601:243:810:b301:fbc1:d290:ab0d:4092

Site          www.facebook.com

## Login

Time          Jan 02, 2025 8:40:27 am

IP address    2601:243:810:b301:fbc1:d290:ab0d:4092

Site          www.facebook.com

## Login

Time          Nov 21, 2024 10:55:13 pm

IP address    98.46.113.144

Site          www.facebook.com

## Login

Time          Nov 02, 2024 12:36:38 pm

IP address    174.238.170.225

Site          www.facebook.com

## Log out

Time          Nov 02, 2024 12:35:26 pm

IP address    174.238.170.225

Site          www.facebook.com

## Login

| Time | Nov 02, 2024 12:35:22 pm |
|---|---|
| IP address | 174.238.170.225 |
| Site | www.facebook.com |

## Log out

| Time | Nov 02, 2024 12:30:25 pm |
|---|---|
| IP address | 174.238.170.225 |
| Site | www.facebook.com |

## Login

| Time | Nov 02, 2024 12:27:46 pm |
|---|---|
| IP address | 67.173.191.21 |
| Site | www.facebook.com |

## Log out

| Time | Nov 02, 2024 12:27:21 pm |
|---|---|
| IP address | 67.173.191.21 |
| Site | www.facebook.com |

## Log out

| Time | Oct 31, 2024 11:15:47 am |
|---|---|
| IP address | 2601:243:810:4ecc:e03:ada7:c389:493c |
| Site | www.facebook.com |

## Login

| Time | Oct 31, 2024 11:15:46 am |
|---|---|
| IP address | 2601:243:810:4ecc:e03:ada7:c389:493c |
| Site | www.facebook.com |

## Login

# Exhibit G – Affidavit of Yulia Bokk

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE-26-0002577

MINA AWAD,
Plaintiff,

v.

META PLATFORMS, INC.,
Defendant.

_____/

# SWORN AFFIDAVIT OF YULIA BOKK

## Mandatory AI Disclosure and Certification

*(Pursuant to Broward Administrative Order 2026-03-Gen)*

The undersigned hereby certifies that generative artificial intelligence was used to assist in the preparation of this Affidavit. The specific tools used include Google Gemini and OpenAI ChatGPT. The undersigned has independently reviewed and verified the accuracy of all statements contained herein, including any citations, quotations, paraphrased assertions, facts, and legal analysis.

STATE OF FLORIDA
COUNTY OF BROWARD

BEFORE ME, the undersigned authority, personally appeared **Yulia Bokk**, who, being first duly sworn, deposes and states under penalty of perjury:

1. My name is **Yulia Bokk**. I am over the age of eighteen (18), competent to testify, and have personal knowledge of the facts stated in this Affidavit.
2. I am the wife of the Plaintiff, **Mina Awad**, and we reside together at our family home in **Margate, Broward County, Florida**.
3. I am a **Registered Nurse (RN)** licensed in the State of Florida.
4. On or about **July 16, 2025**, while inside our home, I accessed our shared desktop computer and observed a communication from **Meta Platforms, Inc.** regarding my husband's account.
5. The communication explicitly labeled my husband's account with a designation associated with **"Child Sexual Exploitation."**

6.  As both a mother and a licensed healthcare professional, I was devastated and deeply disturbed by this false and extremely serious accusation.
7.  The publication of this accusation caused me significant emotional distress, anxiety, and ongoing psychological strain.
8.  This emotional distress manifested physically. On one occasion, while my husband and I were driving and discussing the intense stress and reputational harm caused by Meta's accusation, I experienced a sudden nosebleed.
9.  While the bleeding was not prolonged, it occurred unexpectedly during a moment of severe emotional stress and was, to the best of my understanding, a physical manifestation of the psychological strain caused by this situation.
10. I provide this Affidavit to confirm that the above-referenced accusation made by **Meta Platforms, Inc.** was **published to me, a third party**, in **Broward County, Florida**.

FURTHER AFFIANT SAYETH NAUGHT.

**YULIA BOKK, Affiant**                    3/9/2026

**NOTARY ACKNOWLEDGMENT**

STATE OF FLORIDA
COUNTY OF BROWARD

Sworn to and subscribed before me this _9th_ day of _March_, 2026, by **Yulia Bokk**, who is personally known to me or who has produced _Identification_ _Driver's License_ as identification.

Notary Public, State of Florida

My Commission Expires: _August 21st 2026_



MAYRA Y. RETAMAR
Notary Public-State of Florida
Commission # HH 302754
My Commission Expires
August 21, 2026

# Exhibit H: CFPB Correspondence

- Company **Response Date:** Meta Platforms, Inc. responded to the complaint on September 19, 2025.

- Determination **of Ineligibility:** Meta stated that after investigation, they determined you were "ineligible to use Facebook".

- Refusal **to Provide Details:** Meta explicitly refused to provide the specific evidence or reasons for disabling the account, citing "safety and security reasons".

- Finality **of Decision:** Meta stated that their "decision is final" and that they "now consider this matter to be closed".

- CFPB **Status:** The Consumer Financial Protection Bureau officially closed the complaint following this response.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

# 250829-23625959

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
| --- | --- | --- |
| Submitted to the CFPB on 8/29/2025 | Credit reporting or other personal consumer reports | Problem with a company's investigation into an existing issue |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

I am a licensed mortgage loan officer (NMLS #1894769), and I used Facebook (Meta Platforms, Inc.) as a primary tool to operate my mortgage business through a verified business page titled "Mina Awad NMLS 1894769." On or around [07/16/2025], Facebook disabled my personal and business accounts without prior warning and falsely accused me via email of violating their policies concerning child sexual exploitation — a completely false and defamatory allegation. I have never posted or shared anything that violates such policies. The account was used strictly for business and mortgage client interactions, including advertising my services as a licensed loan officer, engaging with clients, and maintaining a digital presence for regulatory and professional visibility. By shutting down my access and falsely accusing me of criminal activity, Meta has: Destroyed my business presence on their platform Interfered with my ability to operate as a licensed mortgage provider Damaged my reputation both personally and professionally

Caused serious emotional and economic harm Furthermore, Facebook provided no meaningful appeal process or evidence of any violation, nor did they allow me to defend myself or clear my name. I am requesting that the CFPB review whether Meta's actions have improperly interfered with my ability to engage in financial services, and whether their practices amount to unfair or abusive acts affecting a licensed mortgage provider operating under federal and state laws.

**ATTACHMENTS**



meta
accusation.pdf
(193.5 KB)

View full complaint ⊕

 **Sent to company**

**STATUS**

Sent to company on 9/4/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

**Company responded**

| STATUS | RESPONSE TYPE |
| --- | --- |
| Company responded on 9/19/2025 | Closed with explanation |

## Company's Response

Dear MINA AWAD Thank you for contacting us regarding your account(s) being disabled. After further investigation, we have determined that you are ineligible to use Facebook. Unfortunately, for safety and security reasons, we cannot provide additional information as to why your account(s) were disabled. We appreciate your understanding, as this

decision is final. We hope this clarifies the matter and thank you again for taking the time to correspond with us. We now consider this matter to be closed. Sincerely, Meta Platforms, Inc.

**ATTACHMENTS**

MINA AWAD_T237055430_Closed With Explanation.pdf (44.6 KB)

 # Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 9/19/2025 | 11/18/2025 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

 # Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

Complaint Detail

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-
holidays/#url=Overview)

More than 180 languages available.

---

An official website of the United States Government

# Exhibit I: Meta Ads Receipt

- Transaction **Timestamp:** The payment was processed on **Wednesday, July 16, 2025, at 2:58 PM**.

- Transaction **ID:** 23945108845175312-24112381608448039.

- Amount **Billed:** $10.64 USD.

- Product **Type:** Meta ads.

- Account **ID:** 60862686.

- Billing **Reason:** A manual payment was requested on the account.

 Gmail

**mina rasm <minaawadny954@gmail.com>**

---

## Your Meta ads receipt (Account ID: 60862686)
1 message

---

**Meta for Business** <advertise-noreply@support.facebook.com>   Wed, Jul 16, 2025 at 2:58 PM
Reply-To: noreply <noreply@facebookmail.com>
To: Mina Awad <minaawadny954@gmail.com>

## ∞ Meta

Receipt for
Mina Awad (60862686)

Transaction ID
23945108845175312-24112381608448039

## Payment summary

Amount billed
$10.64 USD

Date range
Jul 8, 2025, 12:00 AM - Jul 9, 2025,
11:59 PM

Billing reason
A manual payment was requested on this
account.

Product type
Meta ads

Payment method
Visa · 3695

Reference number
BCSDKUC8D2

| Campaign | Results | Amount |
|---|---|---|
| [07/04/2025] Promoting https://facebook.com/ 100064336291565 | 406 Impressions | $8.80 |
| Post: "" | 218 Impressions | $1.84 |
| Campaign total | | **$10.64** |
| Total | | **$10.64** |

See details                    Manage your ads

⊞ You'll receive your next bill when your ad costs reach $17.00 or on your monthly bill date, whichever comes first.

ⓘ   You're now being billed by Meta Platforms Inc., formerly Facebook, Inc.

This is an automated message. Please do not reply. If you have questions about ads, you can get help. You can also manage your email notification settings for this ad account.
Meta Platforms, Inc., Attention: Community Support, 1 Meta Way, Menlo Park, CA 94025
To help keep your account secure, please don't forward this email. Learn more

# Exhibit J – AAA arbitration correspondence

AAA WebFile

 AAA WebFile®

**Mina Awad v. Meta Platforms, Inc.**   Inactive
Case Number: 01-25-0005-5850, Manager: Paige Chevez, (866)293-4053, PaigeChevez@adr.org

File a New Case

Home

My Cases

My Tasks

Events Calendar

Invoices

My Profile

Rules, Forms and Fees

ClauseBuilder Tool

Education & Training

InfoSec Tips & Training

Sign Out

Help & Support

For case-related questions
and assistance, please
contact your case manager.
For other questions, please
email Customer Service at
CustomerService@adr.org
Report a System Bug

Collapse Sidebar

## Case Details

| | |
|---|---|
| ADR Process | Arbitration |
| Applicable Rules | Commercial Arbitration Rules |
| File Date | 11/11/2025 |
| Track | Expedited |
| Claim Amount | $74,000.00 (View Document) |
| Hearing Locale | Margate, Florida, United States of America |
| Case Manager | **Paige Chevez** 1301 Atwood Avenue, Johnston, RI 02919 (866)293-4053, PaigeChevez@adr.org |

## Case Tracker   AAA Arbitration Roadmap

| | |
|---|---|
| ✓ | Initiation |
| 2 | **Panelist Appointment** |
| 3 | Preliminary Hearing & Preparation |
| 4 | Evidentiary Hearings |
| 5 | Post-Hearing Submissions |
| 6 | Award |
| 7 | Closing |

## Upcoming Event

## Panelist(s)

| Panelist | Phone |
|---|---|
| No data to display. | |

## Case Participants   🖶 Print Contact List

| Party Name | Lead Representative | Secondary Representative |
|---|---|---|
| **Mina Awad  Claimant** | **Mina Awad** 439 North Laurel Drive Margate, FL 33063 (954)446-4536 Minaawadny954@gmail.com | N/A |
| **Meta Platforms, Inc.**  **Respondent** | **Diana Szego Fassbender** Orrick Herrington & Sutcliffe, LLP 2100 Pennsylvania Avenue NW Washington, DC 20037 (202)339-8533 dszego@orrick.com | **Rochelle Swartz** Orrick Herrington & Sutcliffe LLP 51 West 52nd Street New York, NY 10019 Rswartz@orrick.com |

◁ ⬜ ▷



 AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION°

This is not an invoice

# *Financial History*

| History of transactions thru 13-Feb-2026 | | CASE# 012500055850 | | BALANCE $0.00 |
|---|---|---|---|---|
| Name | Mina Awad<br>439 North Laurel Drive<br>Margate<br>Florida 33063 | Mina Awad<br><br>Re: Mina Awad v. Meta Platforms, Inc. | | |

## Administrative Fees

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 14650350 | 10 Feb 2026 | Fee for Increased Claim | $7,475.00 |
| 14624768 | 12 Jan 2026 | Initial Administrative Fee | $1,450.00 |
| 14650350 | 11 Feb 2026 | Cancellation: Fee for Increased Claim | -$7,475.00 |
| | | Subtotal - Administrative Fees | $1,450.00 |

## Neutral Compensations and Expenses

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 14637417 | 26 Jan 2026 | Arbitrator's Compensation | $1,000.00 |
| | | Subtotal - Neutral Compensations and Expenses | $1,000.00 |
| | | Net Total of All Charges | $2,450.00 |

## Payments

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 182753 | 2 Feb 2026 | Received From :mina awad | $1,000.00 |
| 154530 | 11 Nov 2025 | Received From :mina awad | $225.00 |
| 172658 | 10 Jan 2026 | Received From :MINA AWAD | $1,225.00 |
| | | Subtotal - Payments | $2,450.00 |

## Refunds

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| | | Subtotal - Refunds | |
| | | Net Total of All Charges | $2,450.00 |
| | | CASE BALANCE | $0.00 |



AMERICAN ARBITRATION ASSOCIATION·   INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION⁺

| Statement Date |
| --- |
| 11-Mar-26 |
| **Balance Currently Due** |
| $1,000.00 |
| **Case #** |
| 01-25-0005-5850-1-PC |

Case Manager: Paige Chevez PaigeChevez@adr.org

Pay PIN : 12359996

# Detail Invoice/Statement

Mina Awad
439 North Laurel Drive
Margate,FL,33063

Representing: **Mina Awad**

Re: Mina Awad
Vs
Meta Platforms, Inc.

## To pay online directly, click here.

| Statement Date | Case # | Previous Balance | Credits/Cancellations | New Charges | Statement Balance |
| --- | --- | --- | --- | --- | --- |
| 11-Mar-26 | 01-25-0005-5850 | $1,000.00 | $0.00 | $0.00 | $1,000.00 |

| Bill Line Date *Transaction Date* | Bill Line # | Description | Amount | Credits/ Cancellations | Balance | Due Date |
| --- | --- | --- | --- | --- | --- | --- |
| 10-Feb-2026 | 14650350 | Fee for Increased Claim | $7,475.00 | | $0.00 | 10-Feb-2026 |
| *11-Feb-2026* | | Cancellation | | $7,475.00 | | |
| 26-Jan-2026 | 14637417 | Arbitrator's Compensation | $1,000.00 | | $1,000.00 | 02-Feb-2026 |
| *02-Feb-2026* | | Credit Card-mina awad | | $1,000.00 | | |
| *11-Feb-2026* | | -mina awad | | -$1,000.00 | | |
| 12-Jan-2026 | 14624768 | Initial Administrative Fee | $1,450.00 | | $0.00 | 12-Jan-2026 |
| *12-Jan-2026* | | Credit Card-MINA AWAD | | $1,225.00 | | |
| *12-Jan-2026* | | Credit Card-mina awad | | $225.00 | | |

| Statement Balance | Balance Currently Due |
| --- | --- |
| $1,000.00 | $1,000.00 |

**Corporate Address and Tax ID**: American Arbitration Association, 120 Broadway, 21st Floor, New York, NY 10271, EIN: 13-0429745

 AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

| Statement Date |
|---|
| 11-Mar-26 |
| **Balance Currently Due** |
| $1,000.00 |
| **Case #** |
| 01-25-0005-5850-1-PC |

Case Manager: Paige Chevez PaigeChevez@adr.org

Pay PIN : 12359996

# Payment Options

**Paying by Credit Card or eCheck** - **(Preferred method for quickest receipt of payment)**
To pay this invoice online directly, click here. Or you can go to www.adr.org , click on **"File or Access your Case"** and then select **"Quick Pay an Invoice"** and use this **Pay PIN**:12359996 . Please note that where permitted by law 2.6 % processing fee will be assessed on payments made by credit card ; all such processing fees are non-refundable, regardless of whether AAA fees or compensation or expense deposits are later refunded in full or in part. The AAA accepts payment by Visa, MasterCard, and Discover. **There is no processing fee for payments made by echeck or debit cards.**

## Wire Transfer

As information transmitted by the bank is often truncated due to limited space, please email your reference information (Case #/Bill Line #/Program #/Party Name) with the date and amount of your wire, to ensure that your payment is credited promptly and correctly (e.g. 011400021841 P1 or #1234567 P2 or EDU1234). Please email as follows:

For active cases: send to your AAA case representative and corpfinance@adr.org
For new filings (where your case number is not known): send to casefiling@adr.org and corpfinance@adr.org

FOR WIRES / ACH / EFT
    **Name of Bank:** Bank of America
    **Address:** One Bryant Park, 115 W 42nd St, New York, NY 10036, USA
    **Account Name:** American Arbitration Association Inc
    **Account Number:** 483094342498
    **ABA/Transit Number:** 021000322
    **Wire Transit Number:** 026009593
    **Reference:** Case # and Bill Line #/Party Name; or Program # (as applicable)
    **Swift Code/BIC:** BOFAUS3N

Note: Please take steps to ensure that your bank does in fact wire the entire amount to our account. From time to time, certain banks will keep a portion of the wire transfer for their own service fee, leaving a balance due to the AAA/ICDR.

## Paying by Check
Please return this page with your payment made payable to the **American Arbitration Association** (Please indicate the Case # on the check) and forward to the full address below including the exact lockbox number to avoid any untimely postal returns.

    Bank of America Lockbox Services
    American Arb Assoc **845299**
    1950 N. Stemmons Freeway, Suite 5010
    Dallas, TX  75207

## W-9 Information
A copy of the American Arbitration Association's current W-9 is available here

**Corporate Address and Tax ID**: American Arbitration Association, 120 Broadway, 21st Floor, New York, NY 10271, EIN: 13-0429745



AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

Northeast Case Management Center
Elizabeth Corsetti, JD
Assistant Vice President
1301 Atwood Avenue
Johnston, RI 02919
Telephone: (866)293-4053
Fax: (866)644-0234

March 6, 2026

Mina Awad
439 North Laurel Drive
Margate, FL 33063
Via Email to: Minaawadny954@gmail.com

Diana Szego Fassbender, Esq.
Orrick Herrington & Sutcliffe, LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Via Email to: dszego@orrick.com

Case Number: 01-25-0005-5850
Mina Awad
-vs-
Meta Platforms, Inc.

Dear Parties:

This will confirm the parties have agreed to place this matter in abeyance.

Please note that if your case becomes active again after being in abeyance for more than one (1) year, the compensation rate of the Arbitrator will be updated to reflect that of their current biographical data. Further, please note that it is possible that the same arbitrator may no longer be available to serve.

We ask the parties to advise us the status of the above referenced case. If the AAA may assist the parties to expedite the resolution of this matter, please do not hesitate to contact us.

Sincerely,
/s/
Paige Chevez
Case Administrator
Direct Dial: (401)267-4974
Email: PaigeChevez@adr.org

cc:    Rochelle Swartz, Esq.

 Gmail

**mina rasm <minaawadny954@gmail.com>**

# FORMAL REQUEST FOR SUPERVISORY REVIEW – CONSUMER RULE APPLICABILITY – Case No. 01-25-0005-5850

**mina rasm** <minaawadny954@gmail.com>                                            Wed, Feb 11, 2026 at 5:41 PM
To: AAA Paige Chevez <PaigeChevez@adr.org>
Cc: Legal@meta.com, ip@fb.com

Dear Ms. Chevez,

FORMAL REQUEST FOR SUPERVISORY REVIEW OF CLASSIFICATION DETERMINATION

I respectfully request supervisory review of the administrative determination classifying this matter under the Commercial Arbitration Rules.

GOVERNING META TERMS OF SERVICE

The arbitration provision in Meta Platforms, Inc.'s Terms of Service expressly provides:

"The arbitration shall be administered by the American Arbitration Association (AAA) in accordance with its Consumer Arbitration Rules."

This language mandates administration under the AAA Consumer Arbitration Rules and does not reference application of the Commercial Rules.

APPLICABILITY UNDER AAA CONSUMER RULE R-1

Consumer Rule R-1 provides that the Consumer Arbitration Rules apply to disputes between an individual consumer and a business arising from a standardized, non-negotiated agreement.

This dispute meets that definition:

• I am an individual.
• The agreement is standardized and non-negotiable.
• The Facebook account at issue has existed for approximately 12–17 years.
• The account was created and primarily maintained for personal use.

CLARIFICATION REGARDING LICENSES AND INCIDENTAL ACTIVITY

While I am a licensed individual professionally, the Facebook account itself was not established as a negotiated business contract or commercial services agreement.

My primary use of the account over more than a decade was personal. I posted personal content, including videos relating to mortgage topics. On limited occasions, I may have used incidental advertising features; however, this was minimal and not reflective of a structured commercial enterprise or a separately negotiated business relationship with Meta.

The existence of professional licenses does not convert a long-standing personal social media account governed by standardized Terms of Service into a commercial contract.

CONSUMER DUE PROCESS CONSIDERATIONS

The AAA Consumer Due Process Protocol is designed to ensure accessibility and fairness for individuals in disputes with businesses. Applying the Commercial Rules materially alters the cost allocation contemplated by the governing agreement and imposes significantly higher administrative burdens on an individual claimant.

REQUEST

Because the governing agreement expressly mandates administration under the AAA Consumer Arbitration Rules , and because this dispute arises from a standardized consumer relationship, I respectfully request formal supervisory review of the current classification decision.

My continued participation in arbitrator selection and all proceedings remains UNDER PROTEST and WITHOUT WAIVER of my objection to classification.

Please confirm that this request has been forwarded for supervisory consideration and advise when a determination may be expected.

Sincerely,

Mina Awad

 **Gmail**

mina rasm <minaawadny954@gmail.com>

# AMENDMENT NARROWING CLAIM TO $74,000: Case #01-25-0005-5850 — Mina Awad v. Meta Platforms, Inc.

1 message

**mina rasm** <minaawadny954@gmail.com>                                    Tue, Feb 10, 2026 at 3:46 PM
To: AAA Paige Chevez <PaigeChevez@adr.org>
Cc: ip@fb.com

**To the AAA Case Administrator,**

Pursuant to AAA Consumer Rule R-6, I am filing this **Amendment Narrowing the Scope of Claim** for Case #01-25-0005-5850. I am voluntarily reducing my monetary demand to ensure this case proceeds under the **Consumer Arbitration Rules.**

**1. Amended Monetary Claim:**

I hereby amend and reduce my total claim to **$74,000.** I request that the AAA apply the **Consumer Fee Schedule** and appoint a single arbitrator under the Consumer track.

**2. Amended Legal Claims:**

- **Tortious Interference with Business Relations:** I hold **11 professional licenses**. I utilized my Facebook account as a primary tool for maintaining professional networks and client relations essential to my work under these licenses. By permanently disabling my account based on a false automated flag of "child sexual exploitation," Meta has intentionally and improperly interfered with my ability to conduct business and utilize these 11 licenses.
- **Breach of Contract:** Meta breached its Terms of Service by failing to provide a human review of a clearly erroneous AI-generated flag, resulting in the permanent loss of my professional data and access.

**3. Evidence of Licenses:**

My 11 professional licenses provide me with a "reasonable expectation of economic advantage." Meta's false internal "labeling" of my account—even if communicated privately—resulted in the total destruction of my business "rolodex" and professional communication channel, causing direct financial harm.

**4. AI Disclosure:**

I am disclosing that I used an AI assistant to help draft and calculate my initial $42.1 million filing. I am now amending that amount to this standardized consumer figure ($74,000) to better reflect my damages within the Consumer Arbitration framework.

I have copied Meta's legal team on this email. Please confirm receipt and provide an updated invoice for the consumer filing fee.

Sincerely,

**Mina Awad**